# FIRST DISTRICT, 1895.

### S. S. HANSCOM v. THE STATE OF TEXAS EX REL.
### W. B. LOCKHART.
#### No. 1040.

1. **Election Laws—Act of April 12, 1892, for Cities, Construed.**—The Act of 1892 does not purport to contain within itself a complete system of laws for the conduct of elections in cities where it is put in force.

2. **Marked Ballots—Name of Voter on Back.**—The fact that the name of the voter is written on the back of a ballot is not ground for rejecting it under article 1694 of the Revised Statutes, prohibiting a ballot from bearing any "picture, sign, vignette, device, or stamp mark" thereon.

3. **Same—Other Marks.**—A ballot should not be rejected because of marks and scratches thereon having no meaning, or because the names of candidates were marked out with blue pencil, or because the election officers indorsed their initials thereon, or the words "duplicate," "rejected," etc.

4. **Rejection of Ballots—Rule Governing.**—Violation of the statutory regulations in regard to the form of ballots and manner of voting will not be cause for rejecting the ballots, unless the statute expressly so provides.

5. **Ballot Without Official Stamp.**—A ballot not bearing the official stamp is correctly rejected.

6. **Illiterate Voter—One Judge Assisting to Prepare Ballot.**—The fact that one judge of the election instead of two assisted an illiterate voter in preparing his ballot is not ground for rejecting the ballot, in the absence of fraud.

7. **Money for Treating—Election Judge as a Partisan.**—That a judge of election who before his appointment as such received money from a candidate to be

used in treating voters, and who advocated the cause of such candidate at the polls, prepared the ballot for a voter in the interest of that candidate, will not invalidate the ballot without further proof of fraud.

8. **Fraud Must be Clearly Proved—Presumptions of Fairness.**—Before a ballot can be rejected on the ground of fraud, the fraud must be clearly proved; and the presumptions are in favor of correct and honest action on the part of the election authorities, and that the ballot reflects the wishes of the voter.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Lovejoy & Sampson* and *Spencer & Kincaid*, for appellant.—1. While the law requires ballots to be numbered for the purpose of judicial identification, it prohibits any sign or device whereby the ballot may be extra-judicially identified without comparing it with the poll list, and a ballot which has the same number written upon it twice, once with pencil and once in ink, comes within the prohibition of the law against signs and devices upon the ballot. A ballot so marked should not be counted in counting out the votes.

2. The statute requires the ballots to be numbered for the purpose of judicial identification, in order that fraud may be detected, and this is not complied with by placing upon the ballot two different and distinct numbers.

If from the face of the ballot the intention of the voter is doubtful, then evidence aliunde the ballot is admissible to explain the voter's intention. Davis v. The State, 75 Texas, 429.

3. The names of the voters upon the backs of the ballots were devices and marks of identification. Sayles' Civ. Stats., art. 1694; Baxter v. Ellis, 15 S. E. Rep., 938; Ellis v. Scott, 61 N. W. Rep., 648; Lego v. Stoddart, 22 L. R. A., 468; Pennington v. Hare, 62 N. W. Rep., 116; People v. Board of Canvassers, 129 N. Y., 395; Gen. Laws 1892, p. 13, sec. 28; Australian Ballot Law; Connor v. The State, 86 Texas, 139, 140.

4. Where a ballot is found in the box marked "Duplicate," the presumption is that it was marked by the election officers in counting out the ballots, because it was found by them in the ballot box folded with another ballot, and that they marked it "Duplicate" for the purpose of indicating that fact, or else that the voter who voted it had voted twice, and that this fact was discovered by the election officers. At all events, the presumption is that it was so marked by the election officers for some good and sufficient reason, and the court erred in permitting it to be introduced in evidence and in counting it for relator without any explanation of the mark found upon it. Rev. Stats., arts. 1696, 1697.

5. The word "Voted" in large red capital letters on the back of a ballot constituted a stamp mark as well as a device, and rendered it void. Rev. Stats., art. 1694; Australian Ballot Law, p. 13 et seq.

6. If the ballots of illiterate voters (by which is meant voters who who can not read and write) were prepared by the assistance of only

one judge, then the votes so prepared would be void, and can not be counted in estimating the result of the election. Australian Ballot Law, secs. 26-29; Gen. Laws 1892, p. 13; Ellis v. May, 58 N. W. Rep., 483; Sproule v. Frederick, 11 South. Rep., 472; The State v. Gray, 60 N. W. Rep., 676; Connor v. The State, 86 Texas, 139, 140; Price v. Rusk, 1 L. R. A., 111, and notes; Ransom v. Black, 16 L. R. A., 769; Anderson v. Winfree, 4 S. W. Rep., 351.

7. Provisions of the statutes affecting the purity of the election are mandatory, whether the statute provides that the failure to observe them shall be fatal or not. McCrary on Elec., secs. 199, 200; Suth. on Stat. Con., secs. 451, 459.

*Bradford Hancock, James B. & Charles J. Stubbs,* and *Morgan M. Mann,* for appellee.—1. The law provides, that one of the judges at the time of receiving the ballot shall write upon it the voter's number corresponding with the number of the clerk's list, but nowhere provides that if the number is written more than once the ballot shall be void. Rev. Stats., art 1694, 1697.

2. Nor can such numbering be held to be a "picture, sign, vignette, device, or stamp mark" prohibited by the statute. The State v. Saxon (Fla.), 18 L. R. A., 721; Wyman v. Lemmon, 51 Cal., 273; Coffey v. Edmonds, 58 Cal., 521; State v. Russel (Neb.), 15 L. R. A., 740; Paine on Elec., sec. 498; 6 Am. and Eng. Encyc. of Law, 347, and note; Brown v. McCullum, 74 Iowa, 479; 41 N. W. Rep., 197.

3. Ballot number 186 not being stamped "official ballot," could not be counted. The Act of 1892, section 24, page 17, provides, that "no ballot cast without said words stamped upon it by the said presiding officer shall be counted at said election."

4. Where a statute expressly prohibited placing a number on the ballots and made it a misdemeanor to do so, but did not declare that the votes should be rejected, it was held that they should be received. 6 Am. and Eng. Encyc. of Law, 347; Giddings v. Clark, 4 Cong. Elec. Cases, 91.

5. Although a ballot be marked in violation of such provisions, it shall still be counted, if the law does not command that it be rejected. With reference to marks upon a ballot by which it may afterward be identified, the Act of 1892, section 28, does not declare the ballot void. They must be counted unless the law expressly forbids it. The State v. Connor, 86 Texas, 143; 6 Am. and Eng. Encyc. of Law, 348–350, and notes; Williams v. The State, 69 Texas, 368; Fowler v. The State, 68 Texas, 30; Miller v. Pennoyer (Ore.), 31 Pac. Rep., 830; Wigginton v. Pacheco, 5 Cong. Elec. Cases, 5.

6. If upon the face of the ballot the intention of the voter is clear, the court should construe it as any other written instrument, and it must be interpreted by the ordinary rules which apply to such instruments. Davis v. The State, 75 Texas, 429; Cool. Const. Lim., 764, 769.

WILLIAMS, ASSOCIATE JUSTICE.—This was a proceeding in the nature of a quo warranto instituted by appellee as relator against appellant, for the purpose of trying the right to the office of county judge of Galveston County, for which the parties were opposing condidates at the election of 1894, and to which both claimed to have been elected. After a trial before a jury, in the course of which there was a count made of the ballots cast at the election, it was found that appellee had received a majority of ten votes over appellant, and verdict and judgment were rendered accordingly. In this appeal, many points are relied upon to reverse this judgment. Well condensed as are the briefs of counsel, they necessarily cover much space and present many contentions against and in support of the judgment, which have had our careful consideration. The approach of the end of this term of court, and the propriety of early decision of the cause without unnecessary delay, render it impracticable for us to do more upon most of the points than to announce the conclusions reached concerning them. Some of them of controlling importance will be discussed more at length.

The assignments attacking the information and the right of action under the facts alleged have been disposed of adversely to appellant by the recent opinion of the Supreme Court in the case of Dean v. The State, 88 Texas, 290.

Under the rulings of the court below in the trial of the case, there were counted for relator seventeen ballots from which respondent claimed that the names of both candidates had been erased by the voter, and four upon which respondent claimed the names of both had been left. The ballots have been sent up with the record, and, after an inspection of them, we agree with the court below in his rulings upon all of the first class, except two, viz., number 90 of precinct 5, and number 485, precinct 3, as to which the members of this court are not agreed. Those votes could not change the result, as we find it. We also concur with the trial judge in all of his rulings upon the ballots of the second class, except one, number 312 of precinct 7½, which we think should have been excluded.

The court, over the objection of respondent, excluded ten ballots, which are also before us, on the ground that the names of both relator and respondent had been erased from them, respondent contending that only the name of relator had been erased, leaving his own upon the ticket, and that these ballots should be counted as votes in his favor. We think the rulings of the court were correct as to all of these ballots, except one, number 249 of precinct 3, which, in our opinion, should have been admitted and counted for respondent.

There were counted for relator ten ballots, each of which had the name of the voter who had cast it written upon the back of it, and when they were offered in evidence respondent objected to their admission, on the ground that the indorsements rendered them void.

This contention is based upon article 1694 of the Revised Statutes, and upon the provisions of the Act of the Legislature of April 12, 1892, regulating the registration of voters and the conduct of elections in cities of 10,000 inhabitants, or more, which were in force in Galveston when the election in question was held. Acts 22nd Leg., Called Session, sec. 28, p. 18.

Article 1694 provides, that "all ballots shall be written or printed on plain white paper, without any picture, sign, vignette, device, or stamp mark, except the writing or printing in black ink or black pencil of the names of the candidates and the several offices to be filled, and except the name of the political party whose candidates are on the ticket; provided, such ballots may be written on plain white foolscap, legal cap, or letter paper." There is a further provision for the rejection from the count of tickets not in conformity with the above requirements, and upon other grounds. There are also various provisions prohibiting acts and omissions, the violation of which is declared to be an offense, but is not made ground for rejection of ballots. Arts. 1694, 1695, 1697.

The Act of 1892 does not contain within itself a complete system of laws for the conduct of election in cities where it is put in force, but simply adds to the body of laws upon the subject some additional regulations and safeguards. It is a mistake to assume that it works any such radical change in the election laws of this State as has been wrought in other States by the adoption of a new and complete system of election laws modeled after that of Australia. Decisions of the courts of those States enforcing the minute and rigid regulations of their statutes have often very little application here, and are apt to be misleading rather than otherwise. Our statute introduces comparatively few of the regulations and prohibitions found elsewhere in the reformatory statutes; and generally it seeks to secure obedience to its requirements by the imposition of penalties upon those guilty of violations of them, and not by nullifying ballots that have not been cast in strict accordance with them. In one instance it provides that a ballot cast shall not be counted, i. e., where it has not upon it the official stamp. In another, it provides that "any person who shall show his ballot after it has been marked to any person in such a way as to reveal the contents thereof, or the name of the candidate or candidates for whom he marked his ballot; * * * or any elector or any one who shall, contrary to the provisions of this act, place any mark upon or do anything to his ballot by which it may afterward be identified as the one voted by any particular individual," shall be punished, etc. But it does not declare that the ballot so exposed or marked shall not be counted. Under the Revised Statutes, as they stood before this law was passed, and under the later statute, it is apparent, therefore, that some acts or omissions will cause the rejection of a ballot, while others simply subject persons to prosecution and punishment. It is for the Legislature to prescribe the causes for which votes shall be re-

jected, and to those prescribed the courts have no right to add others. Davis v. The State, 75 Texas, 432, 433; The State v. Phillips, 63 Texas, 393; Owens v. The State, 64 Texas, 509; Williams v. The State, 69 Texas, 372.

It may be conceded that the writing of the voter's name upon the back of his ticket is a violation of the Act of 1892, but as there is no provision in that act which makes the disregard by the voter of the prohibition above quoted a ground for rejecting the ballot, if it is rejected, it must be by virtue of some other law. We are to determine, therefore, whether or not the name upon the ticket is a "picture, sign, vignette, device, or stamp mark" within the meaning of article 1694. If it is either, the vote is, by the express provisions of that article, to be rejected. It is not contended that it is either a picture, sign, vignette, or stamp mark, but it is urged that it is a device. Without entering into any discussion of the various definitions given of that word, we think no one would naturally or ordinarily speak of a person's name as a device, or understand it to be included in that word. It would be a strained interpretation of the language that would make it apply to the name of the voter written upon his ticket—such an interpretation as a court can not put upon an election statute to the disfranchisement of the voter. Says Chief Justice Willie, speaking of this provision of the statute: "All statutes tending to limit the citizen in his exercise of this right (suffrage) should be liberally construed in his favor. Unless the ticket comes within the letter of the prohibition, it should be counted. We do not feel disposed to extend the meaning of the word 'device' beyond its literal signification." Owens v. The State, supra.

In The State ex rel. v. Phillips, 65 Texas, 393, the same judge states the same principle, and says: "By the word 'device' as used in the statute was doubtless meant a figure, mark, or ornament of a similar character with the pictures, signs, etc., enumerated in the same connection, and placed upon the ticket in a like manner."

If we are to assume that the purpose of the prohibition in article 1694 was to prevent the voter from disclosing his vote by investing his ballot with any evidence by which it could afterwards be identified, and hence conclude that the language must be construed to embrace anything which could bring about that result, the contention of appellant might be sound. But that statute neither says that its purpose is to forbid the voter from furnishing means by which to identify his vote, nor forbids his doing it in many ways. He may not vote a ticket such as is prohibited, but many methods of showing his vote are left open to him. Neither the size, shape, thickness, nor texture of the paper on which the ballot is to be written are prescribed. It must be upon plain white paper, but either legal cap, foolscap, or letter paper may be used. It may be wholly written or wholly printed, or partly written and partly printed. Mutilations and irregularities of shape are not prohibited; and finally, the voter is not forbidden to expose his

ticket, or to tell whom he pleases what candidates he is voting for. It therefore seems to the writer to be difficult to maintain the proposition which is assumed in argument, and sometimes in decisions, that the purpose of this statute was to prevent disclosure by the voter of his own ballot. This inference certainly can not be drawn from any comprehensiveness or adequacy in the provisions for the accomplishment of such a purpose. It is worthy of note that the figures, etc., that are prohibited belong to a class which can be easily employed to denote to ignorant or careless voters the complexion of the ticket, and to classify them, and such as can therefore be used with such voters for purposes of deception and fraud. But whatever the object was, the law itself must prescribe the means by which it is to be attained, and prohibitions intended to advance it can not be extended by the courts to embrace others not included in the language. If article 1694 is intended to prevent the voter from furnishing means of identifying his ballot, it only prohibits him from doing so by the use of pictures, signs, vignettes, devices, or stamp marks. The statute of 1892 does attempt more comprehensively to secure from the voter a secret ballot, with no means of identification other than those which may be afterwards lawfully employed, such as the number and poll lists; but its requirements and prohibitions are enforced not by rejection of the ballot, but by penalties imposed on the guilty party. Most of the decisions from other States referred to by appellant in this suit are based upon the recent statutes, which, as above pointed out, are not like ours. In one, however, the letters O K indorsed on a ballot was held by the Supreme Court of North Carolina to be a device within the prohibition of the statute of that State. Baxter v. Ellis, 15 S. E. Rep., 939.

We are not prepared to assent to that decision. See cases referred to in 6 American and English Encyclopædia of Law, 350.

We are therefore of opinion, that the ballots with the names written on them were properly counted. And this virtually disposes of the objection to ballots because the names of candidates not voted for were struck out with a blue pencil, or because initials were written on them, or because the same number was written on them twice. Some of the ballots counted had marks or scratches upon them which could scarcely convey any meaning. Mere marks are not among the things which are declared to avoid the ballot, unless they are "stamp marks." On some of the tickets the initials of the presiding officer are indorsed, and this is objected to. For several reasons this can not be held to affect the validity of the vote. Section 29 of the Act of 1892 prescribes a punishment for any person who shall *falsely* write the initials of the presiding officer or any writing upon a ballot. This section by itself would seem to contemplate that the presiding officer may write his initials on the ballot, as is required in some of the laws on the subject in other States. No provision, however, is found in our law requiring such an indorsement; and the explanation probably is, that this section was taken from another bill on the same subject, containing other regula-

tions about such indorsements, and incorporated in this act.    Connor v. The State, 86 Texas, 133.

At any rate, such initials can hardly be considered a violation of law when it is not done for the purpose of distinguishing the ballot from others.    Again, in the absence of an express provision to that effect, we do not think such an act of the officer should be allowed to destroy the ballot after it has left the hand of the voter.    This reason also applies to the ballots objected to because the word "voted" was stamped on some, and "sworn, lost certificate," on others, and "duplicate" on others.    None of these marks placed by the officer of election on the ballots are, in our opinion, such as ought to render them void.    It is urged in regard to those indorsed "duplicate," that it should be presumed that two ballots were found in the box folded together, and rejected by the officers for that reason.    But the indorsement does not so state, and, as the ballot was found in the box, it was proper to count it, unless some reason is shown why it should be rejected.    The same remark will apply to those ballots marked "rejected."    The court had the ballots before it, and was not concluded by the action of the election officers.    Where no valid reason appeared for excluding a ballot it was proper to admit it, notwithstanding the rulings of those officers.

The ballot referred to in the thirty-ninth assignment of error was correctly held by the court to bear the number 134.    There was a blue pencil mark through the number 426 on one of the ballots, but the number corresponded with the poll list, and there was no other ballot which had on it that number.    The number from its appearance was probably written over a mark already on the ballot.    The court was right in counting the vote.    Ballot number 63 of precinct 15 had also the figure 3 written on it by the presiding officer, and some other ballots had pencil marks on them which would answer for the figure 1. The contention that they were devices is disposed of by what has been said already.    It is also objected to them, that the requirement that the ballots should be numbered is thwarted by the use of more than one number, as it can not be said that either is the proper number of the ballot.    The answer is, that the number which corresponds with the poll list identifies the ballot.    The law is complied with by putting the proper number of the ballot and poll list, and the additional number is not made a reason for rejecting the vote.    The ballot referred to in the forty-eighth assignment was properly held to be number 74, and not 741, as contended by respondent.

It is proper to say, that we agree with counsel for appellant that marks, such as many of those on the ballots above referred to, could be made the means of identifying the ballots cast by voters as they are being cast; and the putting of such marks on the ticket may be violative of the provision above quoted of the Act of 1892.    We do not hold otherwise; but mean to hold simply, that that act does not render void ballots cast in violation of such provision, and that the marks are not such as are included in article 1694 of the Revised Statutes.    If ballots

are to be rejected on such grounds, it is for the Legislature to so prescribe. Until it has done so, the court should follow the rules of construction heretofore established, with knowledge of which these laws were passed.

The ballot not bearing the official stamp was correctly rejected.

We do not agree to the proposition found in the charge of the court, that the Act of 1892 contemplates that illiterate voters may be assisted in preparing their ballots by only one judge. Sections 26 and 27 are as follows:

"Sec. 26. Not more than one person shall at one time be permitted to occupy any one compartment or place provided for electors to prepare their ballots, except when an elector is unable to prepare his ballot he may [be] accompanied by the two judges to assist him, and no person shall remain in or occupy such compartment longer than may be necessary to prepare his ballot.

"Sec. 27. Any elector who declares to the presiding officer that he can not read or write, or that by blindness or other physical disability he is unable to prepare his ballot, shall upon request receive the assistance of two of the judges in the preparation thereof."

The first section makes it unlawful for any person to be in the booth with the voter while preparing his ballot, but makes an exception to this rule in favor of the two judges, when they are entitled under section 27 to accompany him. The two judges are required to so accompany and assist the voter when he declares to the presiding officer his inability, for the reasons mentioned, to prepare his ballot. No exception to the prohibition contained in section 26 is made of any other than two judges. In our opinion, these provisions are intended to protect the voter against danger of imposition from one judge preparing his ballot without check upon his action. But it does not follow that all votes prepared by one judge without the presence of another are to be rejected. The statute does not so provide, and in the absence of some declaration to that effect, these provisions, upon the principles before stated, should be held to be directory. For this reason the instruction in the charge was harmless; and special charges, to the effect that the votes of illiterate persons prepared by only one judge were void, were properly refused. This is true, though the judge who prepared the ballots was a partisan of relator, and had been engaged in advocating his election and advancing his cause. If frauds were practiced upon the voters by such judge, a different principle applies. But we can not assent to the proposition that the mere fact that only one judge prepared the ballot would of itself invalidate the vote, if no fraud is shown to have been perpetrated.

The elections at three of the voting places in the city of Galveston, the Fourth, the Eighth, and the Twelfth, were attacked on the ground that only one judge prepared ballots for illiterate voters, and disregarded instructions, preparing ballots for relator when the voter directed that his vote be cast for respondent. There was evidence that,

sometime prior to the election, money had been paid by relator to two of these persons, who were afterwards selected as judges of election, $10 or $15 dollars to one and $50 to the other, to be used by them in "treating" and advertising relator among their friends.   At the time this was done the parties had not been made election officers, and there is no evidence that it was expected or desired that they should be, or that their appointment was obtained for the purpose of advancing relator's interest.   The court was requested to charge the jury, in effect, that these facts would invalidate all ballots prepared by such judges and cast for relator.   We can not agree to the proposition so broadly stated.   Whatever may be thought of the propriety of persons so related to a candidate acting in the capacity of judges of election, or of the propriety of such methods of conducting a canvass, it can hardly be true, in the absence of a statute so declaring, that a voter who has voted his choice will be deprived of his vote because it was thus prepared for him.   Such would be the effect of instructions asked.   The facts thus shown are circumstances proper to be considered in determining whether or not there was fraud in the election such as should vitiate it; but do not by themselves, we think, have the legal effect claimed.

Witnesses were introduced to show, that at the Fourth, Eighth, and Twelfth precincts the judge aiding illiterate voters fixed some ballots for relator, when he was instructed to prepare them for respondent.

Three witnesses who voted at the Twelfth precinct testified, that they desired to vote for respondent, and carried with them into the compartment tickets previously prepared, which they furnished to the officer as guides in making out their ballots, telling him that they wished to vote for respondent.   Their ballots were prepared by means of the "guide," and were voted.   It transpired on the trial that the ballots were for relator, and were so counted.   It is left in doubt whether this was caused by a mistake in the "guides," or through the error or design of the officer.   These voters could read, and say their tickets were made out as they wanted them, though they also state, they directed them to be made out for respondent.   This officer is shown to have voted for relator, but is not one of those who had received money.   We think this evidence is too uncertain and indefinite to have authorized a jury to conclude that there was fraud in the preparation of these votes. There is further evidence from a witness, who stated that he was a little tipsy, that a boy in the polls at the Twelfth precinct prepared a ballot for him, which he voted, without knowing, and we infer without caring, for whom he voted.   This witness leaves in doubt the identity of the person who prepared his ballot.   Another states, that he went to this voting place with a "guide" and asked one of the judges to prepare his ballot for him, telling him he wished to vote for respondent; that the ticket was prepared, and witness, who could read, found that respondent's name was not on it, and then made out his own ticket.

There is evidence of a witness, that at the Eighth precinct one of the judges, to whom relator had furnished money as before stated, prepared a ballot for the witness, who could read, and while doing so, induced him by a request to change his vote, as he had intended it, from respondent to relator.

Another witness testified, that at the same place a young man fixed his ticket for him, with instructions to leave upon it respondent's name, and after he had prepared it, he called out respondent's name as one of those voted for. This witness also furnished as a guide a ticket which had been prepared before he entered the polls. Whether or not it had respondent's name on it does not appear, but the witness does state that the vote was made out to correspond with the guide. The ticket voted by the witness was counted for relator.

A third witness stated, that at this precinct he pretended that he could not read, and had the presiding officer to make out his ballot, telling the officer that he desired to vote for respondent; that the ticket was prepared with respondent's name erased. This testimony was contradicted.

There is evidence that at the Fourth ward an indifferent voter was induced by one of the judges, to whom relator had furnished money, as mentioned above, to vote for relator. There is no evidence that either of the parties who took money from relator, to be used in advocating his election, in fact deceived or attempted to deceive any voter. The evidence of those voters who furnished tickets for the guidance of the officer in making out their ballots leaves it uncertain whether or not the officers disregarded their instructions. The presumption is in favor of correct and honest action on the part of the election authorities, and the presumption is, too, that the ballot reflects the wishes of the voter. These presumptions are not to be lightly abandoned or overthrown. Before the ballot as found in the box can be rejected on the ground of fraud, the proof must clearly show that fraud has been perpetrated. As we do not think this evidence would have warranted the jury in rejecting these ballots as votes for relator, the special charges asked, which sought to have the question submitted to them, were properly refused. With reference to those voters who, through indifference, permitted the judges to prepare their ballots for relator, it is shown that no fraud or deception was practiced on them. They knew how they voted, and we know of no rule which authorized the court to inquire into the motives or strength of purpose which controlled the voter in casting his vote. The ballot is ordinarily the evidence of the voter's choice, and is to be taken as such until it is shown to be illegal, or appears from sufficient evidence to have been procured by fraud or deception. The officer violates the law when he undertakes to influence the voter at the polls, but that of itself does not render the vote void.

The special charges which would have authorized the jury to set aside the election on the ground of fraud, if proven, were correctly refused, because, as we have seen, the evidence relied on to show

fraud, was too slight to have justified the jury in rendering such a verdict.

The court did not err in instructing the jury to count for relator all votes admitted in evidence. There were no disputed questions of fact, as to any of them, for the jury to pass upon.

The instruction that the counting judges were not entitled to aid illiterate voters, was harmless, as no votes prepared by counting judges were excluded.

The pleadings of both parties taken together put in issue the result of the election, each claiming to have been elected, and were broad enough to authorize the court to render judgment in accordance with the result of the count.

We do not think relator's allegation that the voters, Karbuck, Heims, and Murphy, were not qualified voters, and had voted for respondent, is to be treated as an admission of the disqualification of the voters for the purpose of taking their votes from relator, when it transpired that they voted for him. That allegation was simply one of his contentions, which was completely met by the evidence that those voters had voted for him.

The legality of the appointment of Cornelius Williams as election judge should not be inquired into for the purpose of affecting the validity of votes. He was an officer de facto.

The costs were properly adjudged against the losing party.

Respondent suffered no injury from the refusal of the court to instruct as to burden of proof. No question was submitted to them to be affected by the burden of proof.

The result of our conclusions upon the numerous questions presented is, that the judgment should be affirmed. The addition to appellant's vote of ballots which we hold should have been admitted for him, and the exclusion of that which we hold to have been erroneously admitted and counted for appellee, does not change the result.

*Affirmed.*

Delivered June 6, 1895.