**BASS v. LAWRENCE.   (No. 3440.)***

Court of Civil Appeals of Texas.   Texarkana.
Oct. 27, 1927.

On Rehearing Nov. 10, 1927.

1. **Elections ⊜⊃220—Ballots were not invalidated by failure of election judges to take specified oath before assisting illiterate voters (Rev. St. 1925, art. 3010).**

Rev. St. 1925, art. 3010, requiring election judges to take specified oath before assisting voters to prepare their ballots, *held* so far 'directory that ballots were not invalidated by failure of election judges to take such oath before assisting illiterate voters to prepare ballots, where there was no fraud, in view of Penal Code, arts. 224, 225.

2. **Elections ⊜⊃186(3)—Ballots were not invalidated because election judge failed to sign them before delivery to voters, where he signed them before they were deposited in box (Rev. St. 1925, arts. 3008, 3012, 3018).**

Provisions of Rev. St. 1925, arts. 3008, 3012, 3018, requiring presiding election judge to sign ballots before delivering them to voters is di-

rectory as concerns time when judge shall sign ballots, and ballots were not invalidated by failure of presiding judge to sign them before they were delivered to voters where he signed them before they were deposited in the ballot box and there was no fraud; only the requirement of article 3018 that ballot be actually signed being mandatory.

3. **Elections ⬅253—Ballots were not invalidated by failure of returning officers to deliver copy of returns to county judge or county clerk; statute being directory.**

Provisions of statute respecting election returns *held* directory, and ballots were not invalidated by failure of returning officers to deliver copy of returns to county judge or to county clerk, where there was no fraud.

### On Rehearing.

4. **Elections ⬅220—Ballots of illiterate voters were not invalidated because one judge only assisted each voter in preparing his ballot (Rev. St. 1925, art. 3010).**

Though Rev. St. 1925, art. 3010, provides that two judges of election shall assist a disabled or illiterate voter in preparing his ballot, ballots of illiterate voters were not invalidated by fact that one judge only assisted each such voter where there was no fraud.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit to contest election by A. J. Lawrence against Harvey Bass. From a judgment for plaintiff, defendant appeals. Affirmed.

The suit was by appellee to contest an election to the office of justice of the peace of precinct No. 8, Smith county, Tex., at the general election on November 2, 1926. The commissioners' court declared the result of the election in favor of appellant. There were only two voting boxes in justice peace precinct No. 8—one at Holt, and the other at Browning. The commissioners' court canvassed the returns from the Holt voting box only, and on these returns declared appellant elected justice of the peace. The commissioners' court did not estimate or open the returns of the Browning voting case at the time of canvassing the returns of the election, for the reasons stated in the court's findings of fact Nos. 5 and 7. The certified returns for the Holt box showed that a total of 99 votes were cast, of which 46 votes were cast for appellant and 16 votes were cast for appellee; 34 votes appeared as not counted by the election officers as to office of justice of the peace, for reasons given in the court's finding of fact No. 2. The legal validity of the 34 uncounted votes is made the basis of the present contest. There were 47 votes cast in the election at the Browning voting box. The legal validity of the returns of this voting box, as shown by findings Nos. 6 and 7, and the method and manner of the election officers in receiving votes and in conducting the elec-

tion at this box, as shown in the court's findings of fact Nos. 4 and 5, are made grounds of the present contest. The district court counted the ballots at Holt and Browning voting boxes and made the finding that, with the ballots of both voting boxes being counted the appellee, the contestant, had received a majority of 11 of the legal votes cast and was entitled to hold the office. The judgment was in favor of the appellee. There was no evidence of fraud, as the court concluded.

The trial court made the following findings of fact and conclusions of law:

"(1) At the general election in 1926, held November 2d, an election was held in each of said boxes for all officers, including justice of the peace for said precinct. Harvey Bass was the Democratic nominee for said office, and his name was printed on the ballot; A. J. Lawrence was a candidate, but his name was not on the ballot, but had to be written thereon by those desiring to vote for him. At the Holt box the election was held by the officers appointed by the commissioners' court to hold the election, and returns were duly made and a copy thereof delivered in due season to the county judge of Smith county.

"(2) The returns for the Holt box show that 99 votes were cast; that 34 of these votes were not counted; that of the votes counted Harvey Bass received 46 and A. J. Lawrence 16; that the reason for not counting the 34 votes was that the voters either did not vote for justice of the peace, or, in the opinion of the officers holding the election, it was not certain for whom the ballot was intended. The ballot box was opened by direction of the court, and the ballots counted in open court; and I find that Harvey Bass received 49 and A. J. Lawrence received 22 votes.

"(3) At the polling place for the Browning box on the morning of the election the party appointed by the commissioners' court as presiding judge to hold the election did not appear because of illness, and the voters present elected R. H. C. Butler, a qualified voter then present, as presiding officer to hold the election. Only one judge appointed by the commissioners' court, namely I. N. Browning, was present, and Mr. Butler appointed a clerk, namely J. R. High, and the three held the election. In this box a large majority of the voters are negroes, and there are very few voters qualified to serve as election officers.

"(4) At the Browning box the official ballots had either the name or initials of R. H. C. Butler written thereon, the full signature on three or four of the ballots voted, and his initials 'R. H. C. B.' written on the others. All were written thereon by R. H. C. Butler. These indorsements of name and initials were not made before the polls were opened or ballots handed out, but were made in this way: When a voter presented himself and it was determined that he was entitled to vote, a ballot was handed to the voter; and, when he made out his ticket and handed it back, the presiding officer received it, wrote his name or initials thereon, stamped it 'Voted,' and placed it in the box.

"(5) At the Browning box there were 18, all negroes, who were permitted to vote, but who

were assisted in making out their ballots. I find that each of these 18 was unable to read and write and required assistance to make out their ballots. Sixteen of these were over 60 years of age and qualified voters. Two of them, namely, Joe Lynch and Andrew Bradford, were under 60 years of age and not otherwise infirm save inability to read and write. Each of these 18 voted for A. J. Lawrence. I find that when one of these 18 presented himself to vote and it was determined by the election officers that he was entitled to vote, and to help make out his ticket, one of them would assist the voter, the other two were present in the small voting booth or place where they were holding the election (a room 8x10 feet), where they could see and hear all said and done by the voter and officer assisting, but took no actual part in the making of the ticket. Neither of the officers was sworn to assist the voter as provided by article 3010, R. S. 1925, but only took the general oath as officers of election before polls were opened. This finding applies to each of the voters who were assisted in making out their ballots, and in each instance the ballot was prepared as the voter himself directed.

"(6) The officers of election for the Browning box made out the returns on the forms furnished in the usual way, one copy for the county judge and one copy for the county clerk, and placed these returns (sealed up and properly addressed to the county judge and county clerk, respectively) in the metal box provided for ballots, etc. This metal box, similar in all respects to others in use in Smith county, has two compartments—in one there are three smaller boxes for ballots; the other compartment, I presume, for forms and stationery. It was in this last-mentioned compartment the returns were placed and the box closed. J. R. High, one of the clerks of election, brought the box to Tyler, and went to the county judge's office to deliver it to him. Finding the judge out, he went to the county clerk's office and stated to the deputy clerk in charge of the office that he had the returns of the Browning box. The deputy told him to leave the box in the sheriff's office. He then took the box and left it in the sheriff's office, where he found a large number of other similar election boxes. I find that all election boxes were left in the sheriff's office, and later placed for safe-keeping and storage in a large closet adjoining the sheriff's office, and the Browning and Holt boxes were found in this closet when ordered brought into court on this trial. The closet referred to has no connection with the county clerk's office, but is where election boxes are usually kept. There is not room in the county clerk's office to store them.

"(7) The county commissioners, in canvassing the returns of this election, did not have before them the returns from the Browning box. They made inquiry of the county clerk and county judge; and, as neither of them had any returns, they only canvassed the returns from the Holt box, and on these returns declared Harvey Bass elected justice of the peace for precinct No. 8.

"(8) On opening the Browning box, I found therein the returns duly made out and sealed in an envelope addressed to the county judge; also poll list, ballots, etc. These returns show a total vote of 47, of which A. J. Lawrence received 44 and Harvey Bass 3. I find, however,

300 S.W.—14

that ballot No. 47, voted for A. J. Lawrence, has not the name or initials of the presiding officer indorsed thereon.

"Conclusions of Law.

"There being no evidence of fraud, I conclude:

"(1) That the right of the voter to have his ballot counted should not be denied because the returning officer failed to deliver a copy of the returns to the county judge or the county clerk. These provisions of law with reference to returns are directory and should be liberally construed so as to give effect to the votes as actually cast. I therefore deemed it proper to open the box to ascertain if the returns were in fact made as testified to by the returning officers.

"(2) The initials of the presiding officer written upon the ballots, as shown by the facts, is a substantial compliance with the law.

"(3) That the failure of the officers to take the oath as prescribed by article 3010 of the Statutes of 1925, before aiding a voter to make out his ballot, is not such an irregularity, in the absence of any evidence of fraud, as would invalidate the vote.

"(4) Excluding, as I do, ballot No. 47 because the signature of the presiding officer was not indorsed thereon, and each of the ballots cast by Joe Lynch and Andrew Bradford for the reason that they were illegal, in that they were under 60 years of age and unable to make out their own ballot, the votes of the two boxes show that Harvey Bass received 52 of the legal votes cast, and A. J. Lawrence 63. It therefore follows that A. J. Lawrence was duly elected to the office of justice of the peace, precinct No. 8, Smith county, Tex."

The above findings of fact are not challenged on appeal. The conclusions of law are presented for review.

Nat W. Brooks, of Tyler, for appellant.
Gentry & Gray, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1] It appears from the court's finding of fact No. 5 that 16 voters who cast their votes for appellee were given assistance in the preparation of their ballots by the officers of the election. These voters "were qualified voters over 60 years old and unable to read and write." But, as found by the court, "neither of the officers was sworn to assist the voter as provided by article 3010, R. S. 1925, but only took the general oath as officers of election before the polls were opened. This finding applies to each of the voters who were assisted in making out their ballots, and in each instance the ballot was prepared as the voter himself directed." Further, as found by the court, there is "no evidence of fraud" in the case. There is no contention that the election officers violated the provisions of the article except for their mere omission to take the oath prescribed. The court concluded that the mere failure of the officers to take the oath prescribed by article 3010 did not invalidate the votes; there being no fraud practiced. This conclusion, as found in con-

clusion of law No. 3, is challenged by appellant in his first proposition. The point made and insisted upon is that unless the election officers be "first sworn" preliminary to giving official assistance to the voter, under the penalty terms of article 3010 "the ballot shall not be counted, but shall be void for all purposes." The answer to the point in question is dependent upon the proper construction of the provisions of article 3010, R. S., as the language is not plain and explicit. The article relates entirely to aid given a voter. It begins by forbidding that "any assistance be given a voter in preparing his ballot, except when a voter is unable to prepare the same himself because of some bodily infirmity, such as renders him physically unable to write, or is over sixty years of age and is unable to read and write." Then follows the provision for assistance, reading:

"In which case two judges of such election shall assist him, they having been first sworn that they will not suggest, by word or sign or gesture, how such voter shall vote; and they will confine their assistance to answering his questions, to naming candidates, and the political parties to which they belong, and that they will prepare his ballot as such voter himself shall direct; provided that the voter must in every case explain in the English language how he wishes to vote, and no judge of the election shall use any other than the English language in aiding the voter, or in performing any duty as such judge of the election."

Then follows the paragraph reading:

"Where any assistance is rendered in preparing a ballot other than as herein allowed, the ballot shall not be counted, but shall be void for all purposes."

The language of the penalty is fairly susceptible of the sense or meaning urged by the appellant that the ballot would be invalidated by the omission or failure of the election judges to take the formal oath prescribed. The direction that the election judges shall be "first sworn" may, strictly speaking, be regarded as mandatory, in the sense that there is imposed the duty of obedience on those who come within its purview. And, of course, if that provision were meant to prohibit the election judges from giving assistance or help at all to the assisted voter until and unless such officer shall have been "first sworn," then a limitation was imposed upon the authority of the officer to act, and a noncompliance would be fatal, and the entire act of assistance would fail at the point of not taking the oath. The proceeding could not go on to a conclusion, treating the neglect to take the formal oath as a mere irregularity. But that is not the plain and obvious meaning of the words used, and a different construction from that is fairly authorized as the intended meaning and application of the penalty. It is believed that the language or purport of the article reasonably goes to show that it

was the legislative intention to prohibit, and as a penalty to invalidate the ballot,. "any assistance" or help by the officer to the assisted voter different or "other than as herein" specified, viz. "answering his (the voter's) questions"; (2) "naming candidates, and the political parties to which they belong"; (3) "prepare his ballot as such voter himself shall direct"; (4) and said officer shall not "use any other language than the English language," and shall not "suggest, by word, sign or gesture, how such voter shall vote." There is reasonably and fairly the intention of the Legislature to exact a strict compliance with the enumerated provisions.

The direction of taking the preliminary oath is disjoined and not intended to be included in the penalty paragraph. This view is more in accordance with the Penal Code providing criminal punishment to the officer for violating the above-enumerated provisions. Articles 224, 225, P. C. Irregularity of official action, consisting of the mere neglect or lack of strict compliance with a statutory direction, unless the law declares the specified irregularity fatal, has not usually been allowed to vitiate the ballot when the object and end of the statute has been accomplished and neither the public nor the particular voter injured by the course of proceeding. Courts generally justly consider the chief purpose of such law, namely the obtaining of a fair election and the voter's free choice by ballot, as paramount in importance to minor requirements which prescribe the formal steps to reach that end. As appears in the present case, the objects contemplated by the Legislature of a full and free expression of the voter's choice were in nowise violated or prevented. The omission to take the oath was an innocent irregularity, free of fraud, and not interfering with the full and fair expression of the voter's choice. Therefore it is thought, as the trial judge concluded, that the provision is so far directory that the ballots were not invalidated by the mere fact that the election officer was not sworn. Hunnicut v. State, 75 Tex. 233, 12 S. W. 106.

[2] As appears in finding of fact No. 4, the presiding officer at the Browning box wrote his name or initials on the ballots after the ballots were made out by the voters and before they were placed in the ballot box. He did not indorse his name or initials on the ballots before the ballots were handed out to the voters. The court concluded, in conclusion of law No. 2, that there was a substantial compliance with the law, not invalidating the ballots. The appellant contends that the conclusion is erroneous, as the statutory provision requiring the presiding officer to write his signature on the back of the ballots "previously" to delivery to the voter is mandatory, and a noncompliance with its terms operates to invalidate such ballots. The stat-

ute requires the presiding judge to deliver to the voter "one official ballot on the blank side of which the presiding judge shall have previously written his signature." Article 3008, R. S. Article 3012 explains the reason for having the signature of the officer named. Article 3018 forbids any ballot to be counted "that does not bear the judge's signature." The above requirements spring out of the; policy of the statute to have only the official ballot deposited by the voter to be counted. And, as stated in Turner v. Teller (Tex Civ. App.) 275 S. W. 115:

"The specific purpose of the requirement in question is to make certain the identity of the ballot cast with that of the ballot handed to the voter at the time of voting. Identity may be said to be 'of the essence' of the provision."

Therefore, if the signature of the presiding judge was, as here appears, actually on the ballot at a time before the ballot was deposited by the voter in the voting box and it was an official ballot, the purposes and ends of the statute were accomplished. The direction as to the time when the signature shall be indorsed on the ballot may be regarded as directory. The mandatory portion of the provision, invalidating the ballot if not done, pertains to the actual signature being on the official ballot before depositing it in the ballot box. The court did not err in the conclusion made.

[3] The third proposition brings in review the court's conclusion of law No. 1, based on findings of fact Nos. 6, 7, and 8. It is believed that the trial judge correctly concluded that the provisions of the statute respecting returns should be regarded as directory, the statute not expressly declaring noncompliance to be fatal. Freedom of inquiry in investigating the title to office tends to secure fairness in the conduct of elections and integrity on the part of returning officers. The electors may not be disfranchised for a mere irregularity in forwarding returns, when free from fraud, nor because no return is made in the specific manner provided.

The judgment is affirmed.

### On Rehearing.

[4] The appellant insists that we overlooked the contention that the sixteen votes in the Browning box cast for appellee should not have been counted "because only one officer assisted the voter in preparing the ballot." We did not regard the contention as necessary of discussion in view of the decision under the former statute, substantially of the same wording and not different in purpose, reported in Hanscom v. State, 10 Tex. Civ. App. 638, 31 S. W. 547. In that case it was held that, the fact that a voter was assisted in preparing his ballot by one judge only is not ground for rejecting the ballot, in the absence of

fraud, the statute not providing for its rejection on that ground. Quoting from that case:

"In our opinion, these provisions are intended to protect the voter against danger of imposition from one judge, preparing his ballot without check upon his action. But it does not follow that all votes prepared by one judge without the presence of another are to be rejected. The statute does not so provide, and, in the absence of some declaration to that effect, these provisions upon the principles before stated should be held to be directory."

That exact point is in the present case. The present statute (Rev. St. 1925, art. 3010) goes no further than to state that "two judges of such election shall assist" the disabled voter in preparing his ballot. As concluded in the original opinion, the penalty paragraph does not bear upon and include the direction of taking the preliminary oath, or of two judges assisting the voter. And, as before stated, the Penal Code does not provide a penalty, having the same effect as negative words, against one judge only assisting a disabled voter. The cases holding observance of terms of the law absolutely required are upon a statute the language of which is of dissimilar import.