**STATE ex rel. PAGGI et al. v. FLETCHER, Mayor, et al.**

**No. 2218.**

Court of Civil Appeals of Texas. Beaumont.

May 5, 1932.

Rehearing Denied June 1, 1932.

Smith, Smith, Huffman & Boyd, of Beaumont, for appellants.

Combs & McFaddin, of Beaumont, for appellees.

WALKER, J.

On June 5, 1928, an election was held in the city of Beaumont to determine whether or not a commission should be chosen to form a new charter for the city and to elect charter commissioners. In this election 785 votes were cast for and 782 against the proposition; at precinct 12, a negro box, 53 votes were cast for and 5 against. The result of the election was regularly declared in favor of the proposition and that the commissioners, naming them, were duly elected. At that time there were in the city of Beaumont more than 9,000 qualified voters. Thereafter a contest was filed against the election, but on trial was dismissed by the court and the judgment of dismissal affirmed by this court. Carroll v. Gross (Tex. Civ. App.) 37 S.W.(2d) 286. Afterwards a quo warranto proceeding was instituted contesting the result of the election, but on conclusion of the evidence the plaintiffs in that suit took a nonsuit. The case at bar was filed the 9th of December, 1930, by the state of Texas, through the Attorney General, on relation of Chas. Paggi and Mrs. F. H. Paderas, against E. A. Fletch-

er, mayor, and the city commissioners and the charter commissioners to contest the result of the election only in so far as the result was in favor of the choosing of commissioners to form a new charter. The grounds of the contest were: (a) The list of voters furnished the election officers was not in substantial compliance with article 2975 (Rev. St.); (b) V. H. Bailey, who was regularly designated by the city as judge of the election for Box 12, did not serve in that capacity, but the duties of the office were assumed and discharged by Will Blanchette; (c) some of the ballots voted at Box 12 were signed by Will Blanchette as judge of the election after the ballots had been given to the voters and marked by them but before they were deposited in the ballot box; (d) some of the voters carried into the voting box marked and spurious ballots; (e) no election booths or guard rails were provided for the use of the voters at Box 12; (f) the result of the election at Box 12 was so nearly unanimous as to indicate fraud. The allegation was further made that the election, by virtue of the ordinance under which it was called, was held under the general election laws of the state and that the irregularities, as enumerated above, made the election wholly void.

The defendants answered by general and special demurrers and general denial and other defenses not necessary to mention.

Upon trial judgment was entered in favor of defendants upon an instructed verdict.

### Opinion.

For the purposes of this opinion it will be conceded that the election was held under and governed by the provisions of the general election laws of the state of Texas, by virtue of the ordinance under which it was ordered.

The lists of voters furnished the election judges, under the provisions of article 2975, R. S. 1925, were in the form of all lists furnished since 1923 and were identified as being the lists prepared by the city tax assessor and collector, but they did not bear the official certificate. They contained only the following information: Precinct number, name, race, sex, and address of the voter. The names of the voters were arranged in alphabetical order. The officers of the election at Box 12 testified that they knew personally every voter who voted at that box and knew that each and every voter was a qualified voter; that each voter had with him his poll tax receipt or exemption certificate; that no qualified voter was refused the right to vote, and that some voted whose names may not have been on the official list of voters; that they knew personally every voter in precinct No. 12 and that no one voted who did not live in that precinct; that in receiving the ballot from the voter they did not always check the list of voters to see whether or not he was officially listed.

Because the voting lists furnished the election judges failed to furnish all the information prescribed by article 2975, appellants insist that the election was absolutely void. It is their contention that the provisions of this article are mandatory and that the failure to comply substantially with its conditions rendered the entire election void. As to all voting precincts, except No. 12, the proposition is advanced purely as one of law, but as to precinct No. 12 it is urged in connection with the facts of the election, as stated above. In support of their proposition appellants cite Yett v. Cook, 115 Tex. 205, 281 S. W. 837, and articles 2975, 3005, and 3012 of the Revised Statutes. While it is true that the Supreme Court, in Yett v. Cook, discussed the office of the list of voters provided for by article 2975 and in effect held that the provisions of this article were mandatory, the facts of that case have no relation to the facts of this case, and what was said there can throw but little light on the proposition before us. That was a suit for mandamus, praying for the ordering of an election, and the court's discussion of article 2975 was only by argument in support of the judgment denying mandamus. Here we have the fact that the lists were furnished, and as furnished, acted upon by the judges, and the lists furnished were such as had been used in all city elections since 1923. On the facts of this case, we think article 2975, prescribing a form for the certified list of voters, should be construed as directory and not mandatory. To have relief because its provisions were not complied with, appellants rested under the burden of alleging and proving "injury," which was not done. The right to vote is a constitutional right, and, while the Legislature has the power to establish rules regulating this right, such regulations should generally be given a liberal construction to effectuate the constitutional right of suffrage. Regulations which, from their very nature, are deemed absolutely essential to accomplish the purposes of constitutional suffrage, are deemed mandatory; such as, that voting shall be by ballot, that it shall take place on a certain day within certain precincts, etc. But regulations that are nothing more than mere directions for holding the election are considered merely formal in character and should be construed as directory. This is the clear holding of the Supreme Court in McKinney v. O'Connor, 26 Tex. 5, and Fowler v. State, 68 Tex. 30, 3 S. W. 255; also of this court in State v. Logan (Tex. Civ. App.) 5 S.W.(2d) 247, and Scurlock v. Wingate (Tex. Civ. App.) 283 S. W. 307. See, also, Turner v. Teller (Tex. Civ. App.) 275 S. W. 115; Bass v. Lawrence (Tex. Civ. App.) 300 S. W. 207. There is nothing in these authorities denying power to the Legislature to make mere regulations

mandatory, but regulations which are not, in their nature, mandatory, should not be given that construction unless that intention clearly appears from the language of the regulation. This principle was clearly recognized by us in State v. Logan, supra.

■ That Vince Bailey, who had been designated by the municipal authorities to serve as election judge of precinct 12, failed to discharge the office of his appointment, but resigned his office to Will Blanchette, who thereupon acted as judge of the election from the opening to the close of the polls, did not vitiate the election. In addition to the statement already made, it should be said that Will Blanchette acted as judge with the consent of the voters who participated in the election, and that he did not do anything illegal in the discharge of the duties of his office. The fact is that the election was held in all respects as Vince Bailey would have held it had he conducted it in a lawful manner. The mere substitution of Will Blanchette as judge in lieu of the regularly appointed V. H. Bailey did not vitiate the election. In Buchanan v. Graham, 36 Tex. Civ. App. 468, 81 S. W. 1237, 1239, the county judge failed to call an election for school trustees at the proper time, but on the regular date a number of persons who thought the election should be held assembled at the accustomed place for holding the election and proceeded to elect trustees. No election officers had been appointed, nor did the voters formally make a selection; but no objection of any kind was made against those who held the election by any one who participated in the election. All the voters peaceably consented to the action of those who undertook to hold the election. The election officers were not sworn, nor were they furnished with the proper blanks for holding the election. In sustaining the result, the court said: "We have had no difficulty in arriving at the conclusion that the election of appellees was not void. It is universally held, we believe, that the prime object to be attained in an election is to ascertain the expressed will of the electors participating in such election; and that, where such election is fairly and honestly held, and the will of the electors is readily ascertained therefrom, mere irregularities will not render the election void." The point was directly decided in Hill v. Smithville Independent School District (Tex. Com. App.) 251 S. W. 209, 211. In that case the facts were that Roger Burn, without legal authority, selected the judges of the election. The officers so selected assumed the duties of their office and duly held the election. On this ground a contest was filed. The court, denying the contest, said: "As to the claim of irregularity urged by the plaintiffs in error as invalidating the election authorizing the 60 cent tax, the rule is that statutes regulating the manner of holding an election are merely directory, and a departure from their provisions will not, ordinarily, invalidate an election, unless such departure or such irregularity have affected or changed the result of the election. Dillon on Municipal Corporations (5th Ed.) vol. 1, p. 642; McCrary on Elections, § 200; Wilmarth v. Reagan (Tex. Civ. App.) 231 S. W. 445." See, also, Hunnicutt v. State, 75 Tex. 233, 12 S. W. 106, and Deaver v. State, 27 Tex. Civ. App. 453, 66 S. W. 256.

■ The failure of Will Blanchette, as judge of the election, to write his name on the back of the ballots before handing them to the voters, did not render such ballots illegal when it was shown that after the voters had marked their ballots and returned them to Will Blanchette as judge of the election, he wrote his name thereon before depositing them in the ballot box. His signature placed upon the ballots at that time effectively identified them as being the ballots voted. The provisions of the general statutes (Rev. St. 1925, art. 3008) invoked by appellants in aid of this proposition are merely directory. Bass v. Lawrence (Tex. Civ. App.) 300 S. W. 207; Clark v. Hardison, 40 Tex. Civ. App. 611, 90 S. W. 342.

■ The failure to provide voting booths and guard rails for the use of the voters at Box 12 did not render the election void. The provisions of the general statute (Rev. St. 1925, arts. 2986–2989) requiring that voting places be equipped with booths and guard rails are merely directory. In this case the evidence affirmatively excluded the possibility of injury. Each and every voter who presented himself at Box 12 to vote was furnished a ballot and given an opportunity to vote his judgment on the issue as submitted. There was no evidence of any interference, intimidation, or other improper influence in the election. On this issue the court, in Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1166, 1171, said: "The provision of the law in regard to voting booths is for the purpose of obtaining secrecy of ballot and is peculiarly for the benefit of the voter, and, while the law in regard to voters preparing their ballots in the booths should be enforced, the failure to do so would not invalidate the votes of those not using the booths."

■ The fact that 53 votes were cast at Box 12 in favor of the proposition, as submitted, and 5 against, was not evidentiary on the issue of fraud and did not tend to show that improper influences entered into the result of the election; also, the fact that spurious ballots were carried to the polls by certain voters, to be used by them for information in marking their ballots, did not vitiate the result. It was shown that the voters who had these spurious ballots in their possession were required by the election officers to get rid of them and not to use them in mark-

454

ing their ballots. The mere fact that these spurious ballots were thrown upon the floor and afterwards found there did not vitiate the result. This fact was evidentiary only upon the issue of the extent to which the ballots were carried to the polls.

Appellees urged certain pleas in abatement in the court below against appellants' petition and have filed in this court motions to dismiss the appeal upon certain specific grounds. We do not state the nature of nor discuss these pleas in abatement and motions to dismiss because, in our judgment, this case was correctly tried below upon its merits.

The judgment appealed from is in all things affirmed.

### On Rehearing.

Appellants say that the point made by them under article 2975 was that the law required the county tax collector and "not a City department head" to prepare and furnish the poll tax list. This proposition does not raise any issue not disposed of by the original opinion. By the statement "it was shown that the voters who had these spurious ballots in their possession were required by the election officers to get rid of them and not to use them in marking their ballots," we meant only that where it was called to the attention of the election judges that certain voters held spurious ballots in their possession they were required to get rid of them and were not permitted to use them in marking their ballots.

In all other respects the motion for rehearing is overruled.