## COMMON SCHOOL DIST. NO. 22, STEPHENS COUNTY, v. FARMERS & BANKERS LIFE INS. CO.

### No. 1557.

Court of Civil Appeals of Texas. Eastland.

May 29, 1936.

Rehearing Denied June 26, 1936.

Frank S. Roberts and C. J. O'Connor, both of Breckenridge, for appellant.

Smith & Eplen, of Abilene, Harrell & Allison, of Breckenridge, and Elcock & Martin and A. B. Huguenin, all of Wichita, Kan., for appellee.

LESLIE, Chief Justice.

The Farmers & Bankers Life Insurance Company instituted this suit against the Common School District No. 22, Stephens County, Texas, to recover the interest on school building bonds theretofore issued by the district, and also to obtain a decree establishing the legality of the bonds, the validity of which had been questioned by the district. The defendant answered by general demurrer, general denial, and spe-cial pleas in bar. The trial was before the court without a jury, and resulted in a judgment in favor of the plaintiff for interest in the sum of $1,304.04, and establishing the validity of the bonds. The defendant appeals. The parties will be referred to as in the trial court.

The defendant seeks to defeat the recovery on the interest coupons, etc., on the theory that no valid election was ever held in the district authorizing the issuance of the bonds to which the interest coupons are attached.

The first point in support of the proposition is that before a common school district can issue schoolhouse bonds "it is mandatory that the proposition of the levy of maintenance tax and the issuance of the bonds be first submitted to the voters of the district at one and the same election," and that·it must affirmatively appear from the election returns and the canvass of said returns and the order of the commissioners' court declaring the results of said election that both propositions carried by a majority of the votes cast at said election before any bond or coupon based upon the election can be legally issued.

The second proposition presents the contention that when an election is held in such district to determine whether there shall be issued such bonds and a maintenance tax levied, and the election officers holding the election do not certify as to the vote cast for and against said maintenance tax, but expressly state in the returns that, "The returns for maintenance tax are omitted," and the commissioners' court after canvassing said returns merely declares the result of the vote cast for and against the bonds, but does not declare the vote cast for and against the maintenance tax, the subsequent order of the court issuing said bonds based on such election and the bonds and coupons issued thereunder are void.

The third contention is that the plaintiff, in asserting the legality of the election, had the burden of establishing the majority of the votes cast at said election were in favor of the levy of the tax for the payment of the bonds, and that having failed to discharge such burden, the plaintiff was not entitled to recover.

We shall consider these propositions together. On May 9, 1921, a proper number of taxpaying voters of the district presented to the county judge of Stephens county

their petition for an election to determine whether the bonds of such school district should be issued and provision made for the payment thereof. The petition prayed for an election to determine: "Whether a majority of the * ' * * voters of said district desire that issuance of bonds, * * * aggregating $15,000 * * * to provide funds to be expended in the payment * * * of a school building of brick material, and to determine whether the commissioners' court of said county shall be authorized to levy, assess and collect annually while said bonds or any of them are outstanding, a tax upon all taxable property within said district sufficient to pay the current interest on said bonds and provide a sinking fund sufficient to pay the principal at maturity."

On May 23, 1921, the county judge ordered an election based on said petition, and the order specified particularly that the election was to be held to determine whether a majority of the qualified voters of the district desired the issuance of bonds amounting to $15,000 to be expended in the construction of a brick school building and "to determine whether the commissioners' court of the county shall be authorized to levy, assess and collect annually a tax upon all taxable property within said district sufficient to pay the current interest on said bonds and provide a sinking fund sufficient to pay the principal at maturity." This order specified who were entitled to vote at the election and that "all voters desiring to support the proposition to issue bonds shall have written or printed on their ballots the words 'For the issuance of bonds and the levy of the tax in payment thereof,' and those opposed shall have written or printed on their ballots the words 'Against the issuance of bonds and the levy of the tax in payment thereof' * * *."

The sheriff's notice of such election conformed to the petition therefor, and the orders directing the same. It carried the specific information reflected by the petition and order as to the purpose of the election, both as to voting the bonds and making provision for the payment of interest and establishing necessary sinking funds. Said notice stated the wording of the ballots which conformed to the judge's order of the election and referred specifically to the same.

On the 21st day of June, 1921, the judges holding the said election made their returns certifying as follows:

"We, the undersigned officers holding an election at Wayland, in the town of Wayland in said district on the 21st day of June, 1921, to determine whether the bonds and tax of said school district shall be issued to the amount of Fifteen Thousand Dollars ($15,000) payable twenty years from their date and bearing six per centum for the purpose of building, equipping and maintaining a public free school and whether there shall be annually levied and collected on all the taxable property in said district for the current year and annually thereafter while said bonds or any of them are outstanding a tax sufficient to pay the current interest on said bonds and provide a sinking fund sufficient to pay the principal at maturity, do hereby certify that at said election there was 34 votes cast, of which number there was cast:

"For the bonds           34
"Against the bonds       ·0
"Majority for bonds:     34

"(The returns for maintenance tax are omitted)

"We herewith enclose the poll tax list and tally sheet of said election."

On July 12, 1921, the commissioners' court canvassed the returns of the election and entered its order declaring the results thereof. In part the order recites: "On this day came on to be considered the returns of an election held * * * in Common School District No. 22, upon the question of issuing $15,000.00 of schoolhouse bonds * * * and levying a tax on all taxable property of said district sufficient to pay the current interest on said bonds and provide a sinking fund sufficient to pay the principal at maturity, and it appearing that said election was in all respects legally held and that said returns were duly made * * * (giving votes cast) * * *, the court does hereby declare the proposition for the issuance of said bonds to have been adopted, and that this court is authorized to issue said bonds and have assessed and collected said tax."

Thereafter the commissioners' court passed an order authorizing the issuance of the bonds, specifying their form, and directed that a tax at the rate of 50 cents on each $100 assessed valuation of the property in the district be annually levied, assessed, and collected to pay the interest on the bonds and create the necessary sinking fund. A transcript of the proceedings relating to and leading up to the issuance

504

of the bonds was submitted to the Attorney General of Texas, and he certified, among other things, that:

"* * * I have carefully examined said bonds in connection with the facts and the Constitution and laws on the subject of the execution of said bonds, and I find upon the evidence submitted to me and as the result of a careful examination of the matter the following facts: * * *

"6. Said bonds are proper in form and in accordance with the order authorizing their issuance and all the requirements of the law under which they were issued have been complied with * * *

"It is my judgment and I so find that said bonds were issued in conformity with the Constitution and laws of the state of Texas, and that they are valid and binding obligations upon said Common School District No. 22 of Stephens County, Texas."

Bonding attorneys approved the legality of the bonds, and the plaintiff for a valuable consideration became the owner of them, believing in the integrity of the same as certified by the Attorney General.

After a careful consideration of the record before us, we are of the opinion that all the proceedings upon which the bond issue was based were carried out with particular observance of the statutory requirements in such cases. As we understand it, the defendant's contention of illegality in the bonds and coupons is based particularly upon the legal effect or significance to be attached to the parenthetical expression above, namely, "(The returns for maintenance tax are omitted.)" The point is reflected in the first and second propositions above.

█ In this contention the defendant seems to confuse "maintenance tax," used in the employment of teachers, etc., with "a tax sufficient to pay the current interest on said bonds and provide a sinking fund sufficient to pay the principal at maturity." The legal sufficiency of the ballots used in the election to vote the bonds and make provision for their payment is not questioned in any respect, but the attack seems to be centered upon the returns as evidenced by the parenthetical expression. We are of the opinion that the returns, standing alone, or taken in connection with the petition for the election, notices, orders declaring the results, and other orders incident to the election, are entirely sufficient to support the bond issue and the tax levied

for the purposes specified. The parenthetical expression evidences nothing that would render the bonds and coupons void and in fact has no material bearing upon the legality of the bonds, which together with the tax to meet them are sustained by independent recitals throughout the proceedings.

The provisions of the law with reference to the returns are directory. Fowler v. State, 68 Tex. 30, 3 S.W. 255; Bass v. Lawrence (Tex.Civ.App.) 300 S.W. 207; Scurlock v. Wingate (Tex.Civ.App.) 283 S.W. 307; Mecaskey v. Ratliff (Tex.Civ. App.) 159 S.W. 115; 56 C.J. p. 664. In the text cited, it is said: "Neither the election nor the levy thereunder is affected by mere irregularities or informalities in the return made by the judges of such an election, which have not affected the result, although a failure to make any return of the election may render illegal any levy thereunder."

In the instant case, however, it is not believed that the returns are either illegal or informal. The return is not shown to have had any prejudicial effect on the rights of the defendant.

█ There is no merit in the contention that prior to the issuance of the bonds, etc., the maintenance tax and the proposition to issue the bonds must have been submitted to the voters at one and the same time. The minutes of the commissioners' court disclose that not only were the bonds in suit voted at an election on June 21, 1921, but that on the same date the district voted to increase the maintenance tax to 75 cents. Hence, it appears that when the voters authorized the issuance of the bonds, etc., they independently of that proposition voted a maintenance tax not to exceed the amount stated. This no doubt accounts for the fact that the election officers returns relating to the vote for bonds, etc., merely referred parenthetically to the maintenance tax, the returns concerning which were evidently made separately and in connection with that proposition voted on the same date.

In Chambers v. Cook (Tex.Civ.App.) 132 S.W. 865, it was held to be an immaterial matter that the maintenance tax was voted at one time and some two months thereafter bonds were voted at another election. In such cases and under the law applicable to the instant one, the amount originally authorized as a maintenance tax would be merely reduced by the amount appropriated for the bonds. Section 11, c. 24, Acts 37th Legislature (1921), applicable to this

case, provides, in part, as follows: "that the rate of bond tax, together with the rate of special local tax of the district for the maintenance of schools therein shall never exceed one dollar on the hundred dollars valuation of taxable property of said school district; but, if the rate of bond tax certified by the County Superintendent to the Commissioners' Court, together with the rate of maintenance tax previously voted in the district, shall at any time exceed one dollar on the hundred dollars valuation, such bond tax shall operate to reduce the maintenance tax to the difference between the rate of the bond tax and one dollar."

The plaintiff also seeks to sustain the judgment on the ground that it is an innocent purchaser for value, that the Attorney General of this state examined and approved the bonds as a legal obligation of the district, and that the bonds themselves carried a certification of their validity, etc., and that at most nothing but an irregularity in returns, if any, is involved. The record seems to support the contention, but we find it unnecessary to lengthen the opinion by a particular consideration. of that point.

The reasons above assigned for overruling the defendant's proposition are deemed sufficient grounds for the affirmance of the judgment, and it is accordingly so ordered.