## SAM HUNNICUTT v. THE STATE EX REL. JOHN T. WITT.

### No. 7137.

1. **Quo Warranto Proceedings—Practice.**—It is proper for the District Court to give precedence to such cases. It was no error to call the case out of its order upon the docket, passing other cases upon the docket to reach it.

2.   **Same.**—Relations or informations made the basis of such proceedings (in nature of quo warranto) should be sworn to.   Although this is not made necessary by the statute, it has been the practice under similar statutes.

3.   **Same.**—It seems where consent is given by the district judge to file the information that no further inquiry could be made as to the source of his information, upon which the consent was given.   It does not affect the regularity of the proceedings that the original information was sworn to before the district attorney filing the proceedings, or that the same was subsequently verified by affidavit before the district clerk after the proceedings had been filed.

4.   **Same.**—It seems that the unsworn information officially made by the district attorney would be sufficient evidence to authorize action upon it by the district judge in giving consent to the filing of the information.

5.   **Same—Affidavit—Certainty.**—Where the affidavit is as direct and positive as in the nature of the matter the affiant could make it, it is sufficient; e. g., as to condition of a ballot where certain knowledge could only be had by opening the ballot boxes and counting.

6.   **Same—Supplemental Information.**—It was the right of the State at any time after the information was filed, with or without the concurrence of the relator, by amendatory or supplementary pleadings to allege any fact bearing upon the question of the respondent's right to the office, and no new cause of action was set up alleging such other facts.

7.   **Amendment.**—Where new facts are alleged by supplement which should have been by amendment, such is but an irregularity and not affecting the merits.

8.   **Same.**—The addition of new facts in a supplemental petition will not be held to be an abandonment of the original information.

9.   **Evidence—Ballot Boxes.**—On the trial of a contested election the county clerk brought into court 23 ballot boxes, 14 of which were not opened.   *Held*, that no error resulted from the mere exhibition of the boxes to the jury, nor by the exclusion of them from evidence when offered as evidence of the want of care for the boxes by the custodian.

10.   **Irregularities in Holding Elections.**—The validity of the acts of officers of elections who are such *de facto* only, so far as they affect third persons and the public, is nowhere questioned.

11.   **Same.**—It being shown that an election was fairly held, and that the acting officers in making return failed to sign them, *held*, that the votes were improperly excluded.

12.   **Opening Ballot Box, etc.**—Where there is confusion between the return and the tally sheets it is proper to verify the vote by opening the box and counting the ballots.

13.   **Practice—Charge.**—Where there is no conflict in the evidence upon an issue it is improper to submit it to the action of the jury.

14.   **Immaterial Errors.**—Errors upon the admission of testimony which could not have changed the result of the verdict is immaterial; e. g., touching the qualifications of voters, the admission or exclusion of which would not change result.

APPEAL from Dallas.   Tried below before Hon. R. E. Burke.
The opinion states the case.

*Sea, Cosby & Lauderdale*, for appellant, cited Rev. Stats., arts. 4098i (subdivs. 3, 4), 1281–1287; Kirkland v. Sullivan, 43 Texas, 233; Prewitt v. Everett, 10 Texas, 283; Hipp v. Bissell, 3 Texas, 18; Cleveland v. Cole, 65 Texas, 402; Blum v. Bassett, 67 Texas, 194; 30 Am. Dec., p.

50 and note; Id., p. 45, note; High on Legal Rem., app. A, secs. 591, 617; Wyatt v. Jeffries, 45 Texas, 154; Sydnor v. Chambers, Dall., 601; Sydnor v. Totman, 6 Texas, 189; Wilson v. Adams, 15 Texas, 323; Dunnenbaum v. Schram, 59 Texas, 281; Fowler v. State, 68 Texas, 30; Ex Parte Towles, 48 Texas, 413; McAllen v. Rhodes, 65 Texas, 348; Owens v. Jennett, 63 Texas, 261; Morales v. Fisk, 66 Texas, 194; Owens v. The State, 64 Texas, 505; 1 Greenl. on Ev., secs. 50, 84; Andrews v. Marshall, 26 Texas, 216; Lee v. Yandell, 69 Texas, 34; Battle v. Guedry, 58 Texas, 111.

*Kearby, McCoy & Hayter,* for appellee, cited Rev. Stats., arts. 4098i (sec. 3), 1277, 1278; Livingston v. The State, 70 Texas, 393; Fountain v. The State, 69 Texas, 512; Millican v. Philips, 63 Texas, 391; High on Ex. Legal Rem., 587; Fowler v. The State, 68 Texas, 33; The State v. Owens, 63 Texas, 267; 5 Wait's Act. and Def., pp. 264, 265; Am. Law of Elec., McCrary, sec. 266; McKinney v. O'Connor, 26 Texas, 14; The People v. Holden, Lead. Cas. of Elec., Brightly, 484; The State v. Manning, 14 Texas, 405; 1 Greenl. on Ev., sec. 84; Am. Law of Elec., McCrary, secs. 297, 301; Lead. Cas. of Elec., Brightly, 383; Railway v. Underwood, 64 Texas, 468; Ruddy v. Kingsbury, 5 Texas, 152; Reid v. Reid, 11 Texas, 593; Hedgepeth v. Robertson, 18 Texas, 872; Eason v. Eason, 61 Texas, 226; Grinnan v. Dean, 62 Texas, 220; Floyd v. Efron & Co., 66 Texas, 221; Caruth v. Grigsby, 57 Texas, 264; Teal v. Terrell, 57 Texas, 261; Wintz v. Morrison, 17 Texas, 388; High on Ex. Legal Rem., sec. 620; State v. Harris, 36 Am. Dec., 462; State v. Evans, Id., 470; Wait's Act. and Def., pp. 258, 270.

STAYTON, CHIEF JUSTICE.—This proceeding was instituted by the county attorney for Dallas County on relation of John T. Witt, and is an information in the nature of *quo warranto* to test the right of appellant to the office of assessor of taxes.

Appellant and relator were opposing candidates for the office at the last general election, and a certificate of election having been issued to the former, the latter claims that this was wrongful, and that in fact he was elected to the office, his right to which he now seeks to establish.

The information alleges that relator received seven votes more than were received by appellant, and that the votes at all the election precincts were correctly estimated by the County Commissioners Court except the vote cast at precinct 58, which it is alleged was not estimated at all on account of defective returns.

It is alleged that at that precinct relator received seven more votes than did his opponent, which, if true, elected him if the votes of other precincts as estimated were legal votes.

The value of the office was alleged to be five thousand dollars, and the

uncontroverted evidence was that the office was worth from four thousand to five thousand dollars.

Appellant answered by exceptions general and special, general denial, and specially that there was a failure to legally hold an election in precinct No. 58, irregularities in precincts Nos. 4 and 5, and that designated persons not legal voters had voted for relator.

The information was filed November 29, 1888, and the original answer on December 19, following.

On January 3, 1889, the county attorney, at his own instance, filed a supplemental information, in which he alleged that certain votes cast for appellant were illegal, and that the Commissioners Court had not made a proper count of the votes cast at precinct No. 32.

Subsequently appellant filed a supplemental answer, which contained general and special exceptions and a general denial, and on March 11 filed a motion to strike out the supplemental information.

The grounds of this motion were that the supplement was not filed on relation but solely at the instance of the county attorney; that it set up new matter and was in effect a new proceeding.

On March 12 appellant filed a motion to dismiss the original information on the ground of supposed conflicts between that and the supplement as to parties and subject matter, and on the further ground that the filing of the supplement was an abandonment of the original information.

These motions were overruled. The original information was sworn to by the relator before the county attorney, and on presentation to the district judge was by him directed to be filed. The relation and information, after having been filed, were again sworn to by the relator before the clerk of the District Court.

On December 28, 1888, this cause was called in the lower court, and by the court set down for trial January 15, 1889, over the objections and exceptions of the respondent. On January 16, 1889, the cause was called for trial and respondent made his application for continuance, which the court overruled and again set the case for trial January 28, 1889, over the objections and exceptions of respondent to both actions of the court. On the 29th of January, 1889, the cause was again called for trial, and the court again set it down for trial February 18, 1889. On February 18, 1889, the court again called the cause for trial and again postponed and set the case for trial March 11, 1889, the first day of next term.

When called on March 11, another application for continuance, based on the absence of witnesses, and denying the right of the court to take the case up out of its order, was filed and overruled.

The application on account of the absence of witnesses was not such as the statute requires on second application; and in view of the character of the proceeding and the evident intent of the statute that such

cases shall be speedily tried, we can not say that the court abused its discretion in placing the case in advance of the five hundred and fifty civil cases preceding it on the docket.

There was no application to postpone the case until some later day of the term, when the witnesses, resident of the county, might have been had by the exercise of that diligence and process which appellant might have used, and to have refused to try the case out of its order would probably have defeated the purpose of the proceeding, and have enabled appellant to hold the office without right for the full term.

It is urged that the affidavit of the relator could not be made before the county attorney, that it could not be made after the proceeding was instituted, and that it was insufficient in that it did not state that the facts alleged were positively true within the knowledge of the affiant.

Such relations or informations should be sworn to, as, although this is not made necessary by the terms of the statute, it has been the practice under similar statutes.

If, as seems to be true, the purpose of the affidavit is to give to the judge, whose permission to file the information must be had, reasonable assurance that facts exist which make its filing necessary or proper, then it ought to be held when such consent is given that no further inquiry as to the source of his information could be made.

The filing of the information establishes no facts on which the merit of the controversy rests; these must be established by evidence on final trial.

The State's officer might file the information without relation, and in that case it would seem that his official statement, unsworn, would be sufficient to authorize a judge to direct an information to be filed.

If the purpose of the affidavit was not that stated, then the second affidavit would not be subject to the objection to amended swearing, for it states no additional facts, and was made in view of the fact that there might be a question as to the authority of the county attorney to administer the oath in the first instance.

The facts on which the information was based could not be known to the relator to be positively true, for, as the record manifests, it became necessary to open some of the ballot boxes and count the votes in order to ascertain what the true result of the election was.

The relator's affidavit was as direct and positive as in the nature of things he could conscientiously make it, and for the purpose for which the affidavit is required we are of opinion was sufficient.

The office was alleged to be of the value of five thousand dollars, and there can be no question of the jurisdiction of the court below under the averments. State ex rel. v. Owens, 63 Texas, 261; McAllen v. Rhodes, 65 Texas, 351.

There was no plea that the averment was fraudulently made for the

purpose of giving the court jurisdiction. It is urged that the court erred in refusing to strike from the file what is termed the supplemental information, because it was not made on relation, as was the original.

It was the right of the State, at any time after the information was filed, with or without the concurrence of the relator, by amended or supplementary pleadings, to allege any fact bearing on the question of respondent's right to hold the office, and no new cause of action was set up, though the prayer for relief may have been more specific and even broader than was the prayer in the original information.

Some of the matters set up in the pleading termed supplemental were such as would have been proper in an amendment, but others were in reply to the answer and proper in a supplementary information, and under this state of facts the court below did not err in overruling appellant's exception referred to in the thirteenth additional assignment.

At most the manner of pleading was but an irregularity not affecting the merits of the controversy, and if the court below erred in this respect this would not furnish sufficient ground for reversal of the judgment, where it is not shown that it in any manner operated injuriously to appellant.

It is claimed that the filing of the supplemental information operated an abandonment of the original, and so upon the theory that the latter was filed upon relation and the former not. We do not see that any such result follows from the facts, and there is nothing to show any intention to abandon the original information.

During the trial it became necessary to open some of the ballot boxes, only nine of which, however, were opened, and when these were brought into court by the county clerk, their proper custodian, he brought fourteen others, and all were placed on a table in the court room, but neither the latter nor their contents were introduced in evidence, and it is now urged that it was error for the court to permit them thus to be exhibited to the jury.

We do not see how this could have injured appellant, who further complains that the court erred in refusing subsequently to permit him to introduce before the jury all the boxes so brought into court, for the purpose of showing from the condition of some of the boxes that they had not been securely kept.

No question was raised by pleading or otherwise as to the ballots in fourteen of the boxes, some of which appear at some time to have contained ballots cast at some former election; and the fact that some of the twenty-three boxes not opened may not have been in such condition as would have authorized the ballots in them to be read furnished no reason for their introduction for the purpose of showing that the boxes opened and from which ballots were counted, without objection or upon proof that they had been properly deposited and securely kept, were not thus kept.

The controlling matter of controversy was as to the election held and vote cast at precinct No. 58, and it is claimed that the court erred in permitting the ballots cast at that election precinct to be counted.

The objections urged to the introduction of the ballots from that precinct were:

1.   That it had not been proved that the presiding and other officers at that precinct had been selected and sworn and the election held in accordance with the law.

2.   That the ballot box from that precinct had not been identified.

3.   That it had not been proved "that the ballot box has been preserved by the proper officers as required by law, and has not been exposed to the reach of unauthorized persons, so as to afford a reasonable probability of not having been changed or tampered with.

But one witness was introduced who testified as to the selection, qualification of the officers, and manner in which the election was conducted. That person stated that the presiding officer appointed by the Commissioners Court attended, but refused to act, whereupon the witness was selected as presiding officer by the voters present; that the officer appointed by the court to preside administered to him the proper oath, and that he administered to the other officers of the election the oath; that the election was fairly held at the place designated.   He gave the names of the officers; that they received the votes of all qualified voters who appeared and offered to vote, made out returns of the election and tally sheets, but did not sign them, intending to sign them afterwards, and always willing to sign them; that the ballots were placed in a box, of the identity of which there is no controversy, and this delivered to the county clerk.

This evidence shows that the officers of the election had been selected and sworn as the law prescribed, and that the election was fairly held; but if it had been shown that the selection of the officers was irregular, that they had not been sworn at all, but that the election was fairly held, we are not prepared to hold that the vote should not have been counted.

"In the courts of the country the ruling has been uniform, and the validity of the acts of officers of election who are such *de facto* only, so far as they affect third persons and the public, is nowhere questioned. The doctrine that whole communities of electors may be disfranchised for the time being, and a minority candidate forced into an office, because one or more of the judges have not been duly sworn, or were not duly chosen, or do not possess all the qualifications for the office, finds no support in the decisions of our judicial tribunals."   McCrary on Elections, 216.   This author here cites the cases bearing on this question.

Under the evidence no controversy arose as to the identity of the box nor the genuineness of the ballots it contained; nor was there evidence

fairly tending to show or even to raise suspicion that it had been tampered with.

It came from the proper custody, and free from suspicion, and could not be excluded even upon proof that it would have been possible while in possession of the county clerk for some person to have tampered with it.

Before papers coming from such a custody can be excluded, facts which throw suspicion upon them must be proved.

Neither party in their pleadings attacked the vote at precinct No. 56, known as the Embree Precinct, and the averment of the information in regard to the vote cast at all precincts in the county to which no specific objection was made, was, in effect, that the votes therein had been correctly estimated by the County Commissioners Court.

To arrive at the true result of the election, with consent of both parties, in the absence of the jury, the returns from all precincts except nine, the ballots of which were counted in the same manner, were estimated and agreed to be correctly estimated, but when it came to the Embree Precinct there was a conflict between the poll and tally lists and the returns, the former showing that relator had received thirteen votes at that precinct and respondent nine, while the returns showed that relator had received five votes and the respondent nine.

The Commissioners Court gave to the relator, it seems, thirteen votes and to respondent nine votes.

In this state of the evidence the court directed the ballot box from that precinct, which was identified and came free from suspicion, to be opened and the ballots counted, and this gave to the relator twelve votes, and to respondent nine votes.

The parties having agreed to the correct estimate on the returns and counting of ballots, and made a tabulated statement thereof, on which appeared for the Embree Precinct the vote for each party as ascertained by count of ballots, the court instructed the jury to regard that in so far a correct estimate of the vote, and in the charge only submitted to the jury contested ballots, and special issues in regard to the votes of named persons claimed by the one or the other to be illegal were so or not, and for whom each of the persons named voted.

It is claimed that the court erred in permitting the count of the ballots from the Embree Precinct, on the ground that there was no pleading which authorized this; but we are of opinion that this proposition can not be maintained, for the effect of the information was to aver that relator there received thirteen votes and respondent nine, and with the conflict of other evidence as to the true votes there received by each the court properly permitted the ballots to be counted in order to ascertain what the truth was.

It is further urged that the court erred in instructing the jury that the parties had agreed to the count contained in the tabulated statement,

which was attached to the charge, in so far as the vote from the Embree Precinct was concerned.

Unless the bill of exceptions is incorrect such an agreement was made, and the court did not err in so instructing the jury.

It was contended by appellant that the ballots from that precinct should not be counted, and that the return alone should be looked to to determine the vote of that precinct, and he never did agree to the contrary; but he did not at any time deny that the true count of the ballots showed the vote to be as stated in the tabulated statement.

His contention was that he was entitled to have the vote estimated from the return, which was in conflict with all other evidence, and he did steadily resist the manifestation of the true vote, which was rendered certain by the count of the ballots, which we have already said was correct under the circumstances and the pleadings.

There was no evidence which raised an issue of fact in reference to the validity of the election in that precinct, as to the identity of the ballot box, or as to the fact of its delivery to the county clerk and his preservation of it in the condition in which it was when he received it; and if otherwise the charge would have been upon the weight of evidence, it was relieved from this by the agreement of the parties as to the true count made under the direction of the court.

The information alleged that J. S. or J. L. Crenshaw was an illegal voter and voted for respondent, and it is urged that it was error to admit proof which showed that T. L. Crenshaw voted for respondent.

The witness stated that his name was T. L. Crenshaw, but that he was called Joe; and it may be that the evidence was admissible, but whether so becomes unimportant, for the jury found that he was a legal voter and voted for respondent.

It was alleged by respondent that John Oates and J. W. Morrison cast illegal votes for relator, in that they voted at a precinct other than the one in which they resided, and for the purpose of proving that they voted at a box named offered to introduce the evidence of a witness to the effect that he saw these persons make out and cast their ballots for relator.

This evidence was excluded, but the bill of exceptions does not show what the objection to the evidence was, and besides the ballot box of that precinct was tendered as better evidence then accessible, but respondent declined to have it opened and the ballots examined.

Having declined the better evidence, if the objection really made was not tenable respondent can not complain.

Like evidence was offered as to two other voters and excluded, but the objection made to its introduction is not given, and it is probably true that the court was of the opinion that there was not such evidence of their non-residence in the precinct in which it was claimed they voted as

to justify evidence of the fact that they voted for the one or the other; but, however this may be, it could not have changed the result had it been shown that they voted in a precinct other than that in which they resided, and for relator.

. It is urged that the court erred in refusing to give a charge requested by appellant in reference to the custody of the ballot box from precinct No. 58, and further erred in giving charges which assumed that the election there held was valid.

There was no conflict in the evidence as to the manner in which the election was held, and that introduced showed a valid election, and it was not error to assume that fact.

It would have been erroneous to have given a charge which would have authorized the jury to believe that there was an issue of fact as to the proper custody of the ballot box, when there was no evidence tending to show that it had not been securely kept, all the evidence showing to the contrary.

The averments of the information as to the eligibility of relator were sufficient and sustained by the evidence.

The cause seems to have been fairly tried, and the evidence shows that relator received a majority of the votes cast.

The judgment will be affirmed.

*Affirmed.*

Delivered June 25, 1889.

· Motion for rehearing transferred to Tyler Term, and there overruled.