T. D. LITTLE et al., Appellants,

v.

The ALTO INDEPENDENT SCHOOL DISTRICT OF ALTO, CHEROKEE COUNTY, Texas, et al., Appellees.

No. 759.

Court of Civil Appeals of Texas, Tyler.

Aug. 29, 1974.

Rehearing Denied Oct. 3, 1974.

888

James N. Parsons, III, Paxton, Whitaker & Parsons, Palestine, for appellants.

Charles R. Holcomb, Cox & Holcomb, Rusk, Emerson Stone, Jr., Stone & Stone, Jacksonville, Peter M. Tart, McCall, Parkhurst & Horton, Dallas, for appellees.

DUNAGAN, Chief Justice.

Appellants, T. D. Little and other residents of the area comprising the Alto Independent School District, brought suit against the Alto Independent School District, contesting an election held on April 7, 1973. The purpose of the election was to determine whether the school district should issue bonds in the amount of $950,000.00. The results of the election were favorable to the issuance of such bonds by a total vote of 601 to 331.[1]

Contestants alleged numerous irregularities and illegalities in the conduct of the election resulting in the perpetration of a fraud on the voters so as to make it impossible to determine the true will of the majority. Contestants also sought to have the ballot boxes opened for a recount of the ballots. The court refused to open the ballot boxes for a recount and upheld the validity of the election. Trial was held before the court without a jury and after hearing all the evidence, the court rendered judgment for the defendants-appellees. From this judgment contestants-appellants have perfected their appeal to this court.

Pursuant to contestants'-appellants' request therefor, the court made and filed its findings of fact and conclusions of law, finding that there was no evidence of any fraud and that the contestants failed to prove any defects in the election concerning a sufficient number of votes to change the results thereof.

Appellants contend that subsections 2 and 4 of Article 4.05 of the Election Code, V.A.T.S., were not complied with in that the notice given of the election failed to state the hour during which the polls would be open and that a copy of the no-

1. The election was conducted using separate ballot boxes for property and non-property voters. Property voters voted in favor of the bonds 498 to 323. Non-property owners voted 103 "for" and 8 "against".

tice as printed in the local newspaper was not filed with the county clerk.

■ Subsection 3 of Art. 4.05 states that "* * * or any other special election is specially provided for by the laws of this state, the notices of election shall be given in compliance with the laws governing each respective election." The Supreme Court of Texas in Wallis v. Williams, 101 Tex. 395, 108 S.W. 153, made a clear distinction between general elections and special elections. The Supreme Court stated that special laws provide for special elections; special laws being those which apply to an "individual or individuals . . . of a class and not to all of a class." It cannot be questioned that the election in question is a special election, Royalty v. Nicholson, 411 S.W.2d 565 (Tex.Civ.App., Houston, 1967, ref'd, n.r.e.), and therefore governed by the special laws applicable thereto. The rules and procedures governing notice for school tax and bond elections are set forth in Sec. 20.04 of the Education Code, V.A.T.S., which states in part that:

> "* * * Each such election shall be called by resolution or order of such governing board or commissioners court, which shall set forth the date of the election, the proposition or propositions to be submitted and voted on, the polling place or places and any other matters deemed necessary or advisable by such governing board or commissioners court."

The evidence clearly shows that such notice requirements were met through the publication of notice in the Alto Herald Newspaper, dated March 22, 1973. Subsections 2 and 4 of Art. 4.05 of the Election Code are not applicable here. Appellants' first contention is overruled.

Appellants next assert that the relationships between some of the election officials and employees of the Alto Independent School District were a violation of Art. 3.-03 of the Election Code and thereby created a situation of bias or prejudice in the conduction of the election. This conten-tion is overruled. Art. 3.03 is concerned with the qualifications of the election judges, clerks and watchers and Subsection (b) states that "no person shall serve as a judge or a clerk in a general, special or primary election who is employed by any *candidate* whose name appears on the ballot * * * or who is related to such *candidate* within the third degree either by affinity or consanguinity." (Emphasis added.)

The record shows that the election judge was the uncle by marriage of the principal of the Alto High School and that the judge had been chosen by the Superintendent of the Alto Independent School District; that one clerk was the wife of the principal of the Alto Elementary School; that a clerk was the first cousin of the principal of the Alto High School; and that another clerk was the sister of the secretary of the Alto Independent School District.

■ However, no evidence of any undue influence or improper tampering with the election process is presented in the record. Although it may be that, as regards Art. 3.03, some of the relationships described are questionable, in the absence of any attempted exercise of influence on electors or unfairness, the fact that some election officers did not meet all qualifications will not render the election void. Hunnicut v. State, 75 Tex. 233, 12 S.W. 106; Bell v. Faulkner, 84 Tex. 187, 19 S.W. 480; Gayle v. Alexander, 75 S.W.2d 706 (Tex.Civ.App., Waco, 1934, n.w.h.). Furthermore, this statute is directory only; hence complete observance of such is not necessary to the validity of the proceeding. Gayle v. Alexander, supra.

In light of our view of the law controlling this point, we think it is immaterial as to whether the language contained in Art. 3.03 of the Texas Election Code is broad enough to be applicable to "specific issues" as well as "candidates." Therefore, we leave this question for future determination.

Appellants base point of error No. 4 on the further assertion that the election in question was held in violation of Art. 7.02 of the Election Code which concerns the necessity for voting booths and guard rails to protect the secrecy and sanctity of the vote. The election was held in the Alto High School Auditorium, which is equipped with fold-down, theatre-type seats. These were used by voters as a place to mark ballots and appellants contend that such facilities could lead to collusion in the marking of ballots. In Altgelt v. Callaghan, 144 S.W. 1166, 1171 (Tex. Civ.App., San Antonio, 1912, dism'd), it was stated that:

"The provision of the law in regard to voting booths is for the purpose of obtaining secrecy of ballot and is peculiarly for the benefit of the voter, and, while the law in regard to voters preparing their ballots in the booth should be enforced, the failure to do so would not invalidate the votes of those not using the booths."

The failure to provide voting booths and guard rails therefore does not render the election void. This provision of the Election Code is likewise directory and, as before, the failure to observe its requirements is not necessary to the validity of the election. State v. Fletcher, 50 S.W.2d 450 (Tex.Civ.App., Beaumont, 1932, dism'd). Appellants' Point No. 4 is overruled.

Appellants also contend that the validity of the election is questionable because of improper custody of the ballot box, which constitutes a violation of Art. 8.29a of the Election Code. Art. 8.29a states that:

"Unless otherwise provided by law, the returns of all elections held by school districts, conservation districts, and other political subdivisions shall be canvassed by the governing board of the subdivision holding the election, and the copy of the returns and accompanying records for use in the official canvass shall be delivered to the presiding officer of the governing board. The governing board shall make proper provision for custody, storage, and safekeeping of the ballot boxes containing the voted ballots, which shall be delivered to the presiding officer or to such other person as the governing board shall direct. * * * The keys to the ballot boxes containing the voted ballots shall be delivered to the constable of the justice precinct in which the office of the governing board of the subdivision is maintained. If the office of constable is vacant, the keys shall be delivered to the sheriff of the county in which the office of the governing board of the subdivision is maintained."

The record reflects that after the ballots had been counted, the election judge turned the locked ballot boxes containing the ballots, along with the key, over to either the Superintendent of the Alto Independent School District or to the Chairman of the Alto School Board. The record also shows that at the time of trial the Superintendent of Schools, Mr. McClendon, had the ballots locked in the school district's safe and that certified returns were given to the County Clerk and the Chairman of the School Board. These same procedures had been followed by the election judge without question in previous bond elections held in Alto. From the evidence and testimony presented, the election judge complied substantially with the Election Code in his handling of the returns and ballot boxes.

In Leslie v. Griffin, 23 S.W.2d 535, 540 (Tex.Civ.App., Austin, 1929), reversed on other grounds by the Supreme Court, 25 S.W.2d 820, the court states:

"It is now well settled that the provisions of the law prescribing the conduct of elections and regulating the character and manner of the returns, and how and when same shall be made, are only directory and not mandatory; and that irregularities in carrying out same, unless such irregularities result in tampering

with the returns, or have prevented the voters from a free exercise of their suffrage, shall not vitiate such election. * * *"

No such results are shown here. The only violation regarding Art. 8.29a was the election judges' not turning over the key to the ballot boxes to the sheriff or constable. Furthermore, the election law provisions regulating returns are directory, and not mandatory and must be liberally construed to give effect to the votes actually cast. Christy v. Oliphint, 291 S.W.2d 406 (Tex.Civ.App., Galveston, 1956), affirmed 157 Tex. 1, 299 S.W.2d 933; Orth v. Benavides, 125 S.W.2d 1081 (Tex.Civ.App., San Antonio, 1939, dism'd). This contention is thereby overruled.

In general, the statutes regulating the manner of holding an election are directory and a departure from their provisions will not ordinarily invalidate an election, unless such departure affects or changes the result of the election. Hill v. Smithville Independent School District, 251 S.W. 209 (Tex.Com.App., 1923, opinion adopted); Kincannon v. Mills, 275 S.W. 1083 (Tex.Civ.App., Waco, 1925, writ ref'd); Baker v. Scranton Independent School District, 287 S.W.2d 210 (Tex.Civ. App., Eastland, 1956, n.w.h.); Minthorn v. Hale, 372 S.W.2d 752 (Tex.Civ.App., Beaumont, 1963, n.w.h.); Sawyer v. Board of Regents of Claredon Junior College, 393 S.W.2d 391 (Tex.Civ.App., Amarillo, 1965, n.w.h.). While it is true that statutory enactments concerning elections must be strictly enforced to prevent fraud, they must also be liberally construed in order to ascertain and effectuate the will of the voters. Turner v. Teller, 275 S.W. 115 (Tex.Civ.App., San Antonio, 1925, n.w.h.). Therefore this court cannot agree with appellants' contention that the trial court erred in concluding that there was no fraud in holding the election. There was no showing that any of the alleged irregularities affected or changed the results of the election. The mere fact that some

directory provisions of the Election Code were not followed by the election officials would not by itself constitute fraud. Thompson v. Barnes, 399 S.W.2d 399 (Tex.Civ.App., Eastland, 1966, dism'd).

Appellants base further contentions on the alleged invalidity of 81 votes cast in the bond election and contend that the trial court erred in not holding the infractions concerning these votes material to the outcome of the election. Thirty votes are alleged to be invalid because of assistance given by the election judge in violation of Art. 8.13 of the Election Code; 36 votes are contested on the grounds that those voting were not registered on the tax rendition rolls in violation of Art. 5.03 of the Election Code; 7 votes are questioned on grounds that those voting sold their property prior to the election, but voted anyway; 7 absentee ballots are questioned for various infractions of Art. 5.05 of the Election Code governing absentee voting and 1 vote is questioned on the lack of residency of the voter. The trial court in its findings of fact held that such infractions, if present, would be immaterial because even assuming such votes to be invalid would not change the results of the election. We agree. Hypothetically, if all 81 votes could have been proved to have been illegally cast "for" the bonds and the 81 therefore invalidated, the result of the election would not change and the bonds would still be approved. The primary purpose of an election contest is to avoid the result of an election. In re Whitlow, 59 Tex. 273; Moore v. Plott, 206 S.W. 958 (Tex. Civ.App., Austin, 1918, n.w.h.); Stephens v. Dodds, 243 S.W. 710 (Tex.Civ.App., Amarillo, 1922, n.w.h.); Kincannon v. Mills, supra; Thurston v. Thomas, 7 S.W.2d 105 (Tex.Civ.App., Beaumont, 1928, n.w.h.). If such purpose cannot be obtained, then any reason for the contest is perfunctory. Therefore, if it cannot be shown from the evidence that the irregularities, if there were any, affected the result of the election, then such irregularities would be immaterial. Mahaffey v. Gill 459 S.W.2d

**892**

919 (Tex.Civ.App., Texarkana, 1970, n.w. h.); Roberts v. Hall, 167 S.W.2d 621 (Tex. Civ.App., Amarillo, 1942, n.w.h.); Kennelly v. Gates, 406 S.W.2d 351 (Tex.Civ. App., Houston, 1966, n.w.h.); Day v. Crutchfield, 400 S.W.2d 377 (Tex.Civ.App., Texarkana, 1965, n.w.h.).

A district judge has very wide discretion in determining whether the ballot box should be opened and the votes recounted. Art. 13.30, subsec. (10), Election Code, V.A.T.S. His decision regarding the question therefore will not be disturbed unless a material abuse of discretion on his part is clearly shown by the record. McIver v. Starkey, 271 S.W.2d 314 (Tex.Civ. App., Waco, 1954, n.w.h.); Day v. Crutchfield, supra; Sewell v. Chambers, 209 S. W.2d 363 (Tex.Civ.App., Fort Worth, 1948, n.w.h.). No such abuse was shown here.

Appellants also assert that the trial court's refusal to void the election is against the great weight and degree of credible evidence. In looking to the entire record in passing upon this contention, In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957), it is concluded that there is evidence to support the trial court's findings and that such findings are not against the great weight and preponderance of such evidence.

Finally appellants contend that even though each individual infraction or illegality above may not be sufficient to warrant a reversal of the trial court, that the cumulative effect of all the infractions would be sufficient to warrant overturning the election results. We think this contention is without merit. It is proper for an appellate court to consider such errors and their cumulative effects in light of the entire record to determine if such did cause the rendition of a faulty judgment. Texas Rules of Civil Procedure, 434, 503; Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956); McDonough Brothers, Inc. v. Lewis, 464 S.W.2d 457

(Tex.Civ.App., San Antonio, 1971, ref'd., n.r.e.); Scott v. McLennan County, 306 S. W.2d 943 (Tex.Civ.App., Waco, 1957, ref'd., n.r.e.); Delhi Pipe Corp. v. Lewis, Inc., 408 S.W.2d 295 (Tex.Civ.App., Corpus Christi, 1966, n.w.h.).

In applying this doctrine here, it is found that none of the individual errors raised would be sufficient to cause rendition of an improper judgment. It also appears that the results of the election would have been essentially the same even if the irregularities had not occurred and there is nothing to indicate that if a new election were held and no irregularities were had, the results would be any different. Therefore, since the election irregularities did not constitute error, the composite of such irregularities would not enhance the error. Sawyer v. Board of Regents of Claredon Junior College, supra.

The court has considered all of appellants' points and finds no reversible error.

Judgment affirmed.