**Donald HARRISON, Appellant,**

v.

**Leroy STANLEY, Appellee.**

**No. 01–05–01065–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 9, 2006.

Dissenting Opinion on Denial of Reconsideration
En Banc May 10, 2006.

Jeffrey A. Shadwick, Woodfill & Pressler, L.L.P., Houston, TX, for Appellant.

W. Andy Taylor, Amanda Eileen Staines Peterson, Andy Taylor & Associates, P.C., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

SAM NUCHIA, Justice.

Appellee, Leroy Stanley, filed an election contest against appellant, Donald Harrison, after an exceedingly close final vote tally in a runoff election for a Pasadena City Council position. The trial court refused appellant's request to include in the final tally three ballots in his favor that had been excluded by the Early Voting Ballot Board. Appellant filed this expedited appeal. Appellant contends that the trial court erred in excluding the ballots at issue. For the reasons that follow, we affirm.

## BACKGROUND

On May 7, 2005, an election pitting appellant against appellee was held for a seat on the Pasadena City Council; it resulted in a tie, necessitating a run-off election. The run-off election was almost as close: 591 votes were tallied for appellant, 590 for appellee. During the course of the ballot counting, the Early Voting Ballot Board ("Board") excluded three ballots from consideration because the signatures on the carrier envelopes and mail-in ballot applications did not match, as required by the Election Code.[1] Appellee filed an election

---

1. *See* TEX. ELEC.CODE ANN. § 87.041(b)(2) (Vernon 2003) (requiring, among other things,

contest, and, after discovery, the parties stipulated that two of appellant's votes were impermissibly counted because one voter lived outside the geographic boundary of the district in question and the other voter's registration status had not become effective until after the run-off election. This placed appellee ahead by one vote, 590 to 589.

After appellee rested his case, appellant introduced the applications for ballot by mail and carrier envelopes of three voters—Donald Howard, Angel Marino, and Gary Gray—who had voted for him. The trial court heard testimony from each of the three voters and, via their depositions, from the four Board members. The Board members testified that they found, as to appellant's three proffered voters, that the signatures on the applications for ballots by mail were not made by the same person who signed the carrier envelopes, thereby violating election law statutes. The trial court agreed, finding that the relevant signatures did not match. The trial court further found that "assistance," as defined in the Texas Election Code, had been given to each of the proffered voters, in contravention of same.[2] The court also found that none of the three proffered voters had a physical disability such that they could not write or see.[3]

## DISCUSSION

▇ The standard of review for an appeal from a judgment in an election contest is whether the trial court abused its discretion. *Tiller v. Martinez*, 974 S.W.2d 769, 772 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.). To overturn an election, the contestant must show that the outcome, as shown by the final canvass, is not the true outcome, either because illegal votes were counted or because an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud or illegal conduct or made a mistake. *See* Tex. Elec.Code Ann. § 221.003 (Vernon 2003).[4] The contestant has the burden to make this showing by clear and convincing evidence. *Alvarez v. Espinoza*, 844 S.W.2d 238, 242 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.). The law presumes that the Ballot Board acted properly in rejecting and accepting ballots; to overcome this presumption, a challenger

---

that signature on ballot application and the carrier envelope be executed by the same person unless signed by a witness).

2. The Code defines assistance as:
   For purposes of this subchapter and Sections 85.035 and 86.010, assisting a voter includes the following conduct by a person other than the voter that occurs while the person is in the presence of the voter's ballot or carrier envelope:
   (1) reading the ballot to the voter;
   (2) directing the voter to read the ballot;
   (3) marking the voter's ballot; or
   (4) directing the voter to mark the ballot.
   Tex. Elec.Code Ann. § 64.0321 (Vernon Supp. 2005).

3. A voter afflicted with these infirmities can have assistance as defined in the Election Code. *See* Tex. Elec.Code Ann. § 64.031 (Vernon 2003).

4. Section 221.003 provides:

   (a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because:
   (1) illegal votes were counted; or
   (2) an election officer or other person officially involved in the administration of the election:
   (A) prevented eligible voters from voting;
   (B) failed to count legal votes; or
   (C) engaged in other fraud or illegal conduct or made a mistake. (b) In this title, "illegal vote" means a vote that is not legally countable.
   (c) This section does not limit a provision of this code or another statute expanding the scope of inquiry in an election contest.
   Tex. Elec.Code Ann. § 221.003 (Vernon 2003).

must show by clear and convincing evidence that the board erred. *Id.* at 244.

■ "To determine whether the trial court abused its discretion, we must review and compare each signature on the early voting ballot applications and carrier envelopes the trial court found to be non-genuine to ascertain whether the signatures are similar enough (i) to compel the conclusion that the same person signed them, or (ii) to override the trial court's conclusion that the same person did not sign them." *Reese v. Duncan,* 80 S.W.3d 650, 661 (Tex.App.-Dallas 2002) ("We do not determine the credibility of any witness or substitute our judgment for that of the trial court."); *see also Alvarez,* 844 S.W.2d at 245

### *Election Code Requirements & Ballot Board*

■ Appellant's first argument is that the Ballot Board incorrectly rejected the three ballots at issue because it impermissibly required that the signatures on the ballot envelope and mail-in application match—a requirement, he argues, not compelled by the Election Code.

To be entitled to vote an early voting ballot by mail, the application must be signed by the eligible voter. TEX. ELEC. CODE ANN. § 84.001(b) (Vernon 2003). A witness may sign for the voter if the voter cannot sign due to a physical disability or illiteracy. *Id.* § 1.011(a). A person who fails to comply with section 84.001 of the Election Code is not entitled to receive an early voting ballot by mail. *Id.* § 84.001(f). A voter is required to sign the certificate on the carrier envelope after it is sealed. *Id.* § 86.005(c). After the early voting clerk delivers the early voting ballots by mail to the Ballot Board, the Board may accept a ballot, among other requirements, if neither the voter's signature on the application nor the signature

on the carrier envelope is "determined to have been executed by a person other than the voter, unless signed by a witness." *Id.* § 87.041(b)(2). If the Ballot Board rejects a ballot, it shall enter 'rejected' on the carrier envelope. *Id.* § 87.041(d).

Section 87.041(b)(2) of the Election Code provides:

> (b) A ballot may be accepted only if:
>
> . . .
>
> (2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness.

*Id.* § 87.041(b)(2). Clearly, what the Ballot Board is required to do is ensure that the same voter signed both the ballot application and carrier envelope. In order to ensure such, section 87.041(e) provides:

> (e) In making the determination under Subsection (b)(2), the board may also compare the signatures with the signature on the voter's registration application to confirm that the signatures match but may not use the registration application signature to determine that the signatures do not match.

*Id.* at § 87.041(e).

Appellant parses the statutory language to require only that both signatures be that of the voter, not that the signatures are required to match. Moreover, or so his argument goes, if, as according to subsection (e), the Ballot Board may not use "the registration application signature to determine that the signatures do not match," why should "the mail-in application and ballot [carrier] envelope signatures be use [*sic*] to invalidate each other?"

However, appellant's argument does not square with election law jurisprudence of

our state. Several courts of appeals have held that the Election Code *does* give the Ballot Board the authority to compare the signatures on the carrier envelope and ballot application to determine if they are sufficiently similar so as to compel the conclusion that they were made by the same person. In *Reese,* the court held:

> The contestant must overcome the presumption that the early voting ballot board or signature-verification committee acted properly in rejecting or accepting ballots. The contestant must show that the board erred. In determining whether there is a signature discrepancy involving an early voting ballot, the trial court may hear testimony from the voter or other witnesses on the similarity of the signatures and may compare the signatures to refute the signature verification committee's decision.

> Having reviewed and compared each pair of challenged signatures in the trial court's finding of fact number twenty-three, we conclude none of the pairs of signatures are similar enough to compel the conclusion that the voter signed the ballot application or carrier envelope or both, or to override the trial court's finding that either the ballot application or the carrier envelope or both were not signed by the voter.

80 S.W.3d at 661–62 (internal citations omitted); *see also Alvarez,* 844 S.W.2d at 245 ("The law places the burden on those who vote early by mail to sign both the application and the envelope with signatures that match. The Early Voting Ballot Board must act on the basis of the signatures before it."). Therefore, the Ballot Board acted in accordance with both statutory and case law in rejecting the ballots. We hold that the Ballot Board acted properly in comparing the signatures on the application and carrier envelope to determine whether they were signed by the same person.

### The Trial Court's Rejection of the Ballots

Appellant's other argument asserts that the trial court erred in rejecting the mail-in ballot applications of Donald Howard, Angel Marino, and Gary Gray. We analyze each ballot separately.

### The Howard Ballot

■ Appellant argues that because Howard testified that the signatures on both the carrier envelope and ballot application were his, the trial court erred in rejecting his ballot. Specifically, appellant argues here that the trial court erred because it relied on the Ballot Board's decision that the relevant signatures did not match—and repeats his argument that the correct standard is whether the signatures were made by the same person. However, because we held above that it was not error for the Ballot Board, nor, by extension of that same reasoning, the trial court, to compare the signatures, what is left of appellant's argument consists of asking us to substitute our judgment for that of the trial court. We decline to do that.

First, it is clear from our review of the signatures that they are not sufficiently similar to compel the conclusion that the voter signed both the carrier envelope and the ballot application. One signature evinces the hand of one who does not have great control over the writing instrument, while the other looks to be the signature of a person with normal motor control. Moreover, the trial court was entitled to believe all, part, or none of the testimony that it heard from Howard. *See Munters Corp. v. Swissco-Young Indus., Inc.,* 100 S.W.3d 292, 299 (Tex.App.-Houston [1 Dist.] 2002) (holding that trial court entitled to believe all, part, or none of evidence adduced). Therefore, we hold that the

trial court did not abuse its discretion in rejecting Howard's ballot. *Tiller,* 974 S.W.2d at 777.

### The Marino Ballot

■ Angel Marino admitted that his two signatures did not match. However, he testified that he printed his name on the carrier envelope—because he thought this was the proper protocol—but penned his usual signature on the ballot application. We can fault neither the Ballot Board nor the trial court for concluding that the signatures do not match—they clearly do not (appellant admits as much), and they certainly do not compel the conclusion that they are sufficiently similar such that they were made by the same person. Therefore, because our review of the signatures mirrors that of the Ballot Board's and the trial court's, we hold that the trial court did not abuse its discretion in rejecting Marino's ballot. *Id.*

### The Gray Ballot

■ Gray's ballot differs in the material sense in that, according to his testimony, his wife signed his ballot application and he signed the carrier envelope. Appellant argues that when certain sections of the Election Code are read together they support a spousal exception to the statutory requirement that the signatures be made by the same person.

Section 84.003 of the Election Code provides:

(a) An early voting ballot application signed for the applicant by a witness other than the early voting clerk or a deputy *must* indicate the witness's relationship to the applicant or, if unrelated, indicate that fact.

(b) A person who acts as a witness for an applicant for an early voting ballot application commits an offense if the person knowingly fails to comply with Section 1.011.[5] A person who in the presence of the applicant otherwise assists an applicant in completing an early voting ballot application commits an offense if the person knowingly fails to comply with Section 1.011(d) in the same manner as a witness.

(c) An offense under this section is a Class A misdemeanor.

(d) Subsection (b) does not apply if the person is related to the applicant within the second degree by affinity or the third degree by consanguinity, as determined under Subchapter B, Chapter 573, Government Code, or is registered to vote at the same address as the applicant.

TEX. ELEC.CODE ANN. § 84.003 (Vernon Supp.2005) (emphasis added). Appellant asserts, correctly, that when one person signs a voter's ballot application in such a manner that it does not conform with sec-

---

5. Section 1.011 provides:

(a) When this code requires a person to sign an application, report, or other document or paper, except as otherwise provided by this code, the document or paper may be signed for the person by a witness, as provided by this section, if the person required to sign cannot do so because of a physical disability or illiteracy.

(b) The person who cannot sign must affix the person's mark to the document or paper, which the witness must attest. If the person cannot make the mark, the witness must state that fact on the document or paper.

(c) The witness must state on the document or paper the name, in printed form, of the person who cannot sign.

(d) The witness must affix the witness's own signature to the document or paper and state the witness's own name, in printed form, near the signature. The witness must also state the witness's residence address unless the witness is an election officer, in which case the witness must state the witness's official title.

(e) The procedure prescribed by this section must be conducted in the presence of the person who cannot sign.

tion 1.011, section 84.003(d) creates statutory immunity for a person related to the voter within the prescribed degrees of consanguinity or affinity. *See id.* at § 84.003(d). However, this does not, as appellant would have it, "support the argument that husbands and wives, residing together, can sign ballot applications for each other."

Section 84.003(d) of the statute only prevents a *misdemeanor prosecution of a* relative who knowingly fails to comply with the Election Code. It does not speak to the requirement delineated in section 84.003(a) that a person signing a ballot application *must* indicate that person's relationship to the voter. The trial court did not abuse its discretion in excluding Gray's ballot.[6]

We conclude that the trial court acted properly in excluding the ballots proffered by appellant and overrule appellant's second point of error.

### CONCLUSION

The decision of the trial court is affirmed in all respects.

TERRY JENNINGS, Justice,
dissenting from the denial of en banc consideration.

The panel, in its opinion, errs in holding that the trial court did not abuse its discretion in rejecting the ballots of two of the voters in question in this election contest case on the grounds that the signatures on the envelopes containing their mail-in ballots did not match the signatures on their mail-in ballot applications. Moreover, the panel's misapplication of law effectively nullifies the legal votes of the two voters, disenfranchises them from the voting pro-

cess, and denies them the safeguard of the Equal Protection Clause of the Fourteenth Amendment.[1] Accordingly, I respectfully dissent from the denial of en banc consideration of this case.

In his sole issue, appellant, Donald Harrison, argues that the trial court abused its discretion in deciding this election contest case in favor of appellee, Leroy Stanley, because the trial court erroneously rejected three crucial votes in favor of Harrison on the grounds that (1) the signatures on the envelopes containing the mail-in ballots in question did not match the signatures on the three voters' mail-in ballot applications and (2) the three voters received "undisclosed assistance" in completing their mail-in ballots.

In its opinion, the panel noted that

To determine whether the trial court abused its discretion, we must review and compare each signature on the early voting ballot applications and carrier envelopes the trial court found to be non-genuine to ascertain whether the signatures are similar enough (i) to compel the conclusion that the same person signed them, or (ii) to override the trial court's conclusion that the same person did not sign them.

*Harrison v. Stanley,* No. 01–05–01065–CV, 193 S.W.3d 581 at 584, 2006 WL 560195, (Tex.App.-Houston [1st Dist.] April 27, 2006, no pet. h.) (quoting *Reese v. Duncan,* 80 S.W.3d 650, 661 (Tex.App.-Dallas 2002, pet. denied)). The panel holds that "the [Early Voting] Ballot Board acted properly in comparing the signatures on the application and carrier envelope to determine whether they were signed by the same

---

6. Because we do not agree with appellant that Gray's wife was allowed to sign the ballot application, we need not take up his argument that since she was allowed to sign the ballot application, we must determine wheth-

er relevant provisions of the Election Code are mandatory or directory.

1. U.S. CONST. amend. XIV.

person." Then, the panel, after its own analysis of the signatures in question, further holds that the trial court did not abuse its discretion in rejecting the ballots of the three voters, Donald Howard, Angel Marino, and Gary Gray. In reaching its holding as to Howard, the panel notes that "the trial court was entitled to believe all, part, or none" of his testimony. *See Munters Corp. v. Swissco–Young Indus., Inc.*, 100 S.W.3d 292, 299 (Tex.App.-Houston [1st Dist.] 2002, pet. dism'd). The panel does not address Harrison's second argument.

In his Motion for En Banc Consideration, Harrison notes that "the panel made an error similar to that made by the trial court in focusing on something that was never an issue in the case." He notes that "[w]hether the signatures matched was never the issue" and

> No one in the case, least of all Appellant, questioned the Ballot Board's authority, its competence, or its discretion in making that determination. The panel stated that Ballot Boards have the authority to match signatures, then stated it was not error to do so and ruled for Appellee. The only point the Appellant tried to make about the Ballot Board was that its decision could not be dispositive since its legitimate function (comparing signatures) is not the ultimate statutory standard in an election contest (i.e. finding out factually whether the signatures were from the same person—a trial court function). When the trial court (and the panel of this court) looked only at whether the Ballot Board had a basis for saying the signatures did not match, it failed to conduct the statutory inquiry of whether the signatures, matching or not, were in fact those of the voter.

In Texas, "statutory enactments concerning elections must be strictly enforced to prevent fraud, [but] they must also be liberally construed in order to ascertain and effectuate the will of the voters." *Little v. Alto Ind. Sch. Dist.*, 513 S.W.2d 886, 891 (Tex.Civ.App.-Tyler 1974, writ dism'd). In fact, the sole purpose of an election contest is to determine the true outcome of an election. The tribunal hearing an election contest "shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome" because:

> (1) illegal votes were counted; or
>
> (2) an election officer or other person officially involved in the administration of an election:
>
> (A) prevented eligible voters from voting;
>
> (B) *failed to count legal votes;* or
>
> (C) engaged in other fraud or illegal conduct or *made a mistake.*

Tex. Elec.Code Ann. § 221.003(a) (Vernon 2003) (emphasis added). An "illegal vote" is a vote that "is not legally countable." Tex. Elec.Code Ann. § 221.003(b) (Vernon 2003).

Here, Harrison alleges that the Early Voting Ballot Board made a mistake in failing to count the legal votes of Howard, Marino, and Gray. There is no allegation and no evidence that any of these duly registered voters engaged in any type of voter fraud.

The trial court simply found that the Early Voting Ballot Board decisions to reject the mail-in ballots of Howard, Marino, and Gray, "based on the finding that the signatures on the applications did not match their respective signatures on the carrier envelopes were correct and properly within their discretion in all respects." The trial court ruled that the "result of that decision is that the rejection of those mail-in ballots is sustained and not overturned and those votes continue not to be counted in favor of the contestee, Harri-

son." However, even assuming, as the trial court concluded, that the Early Voting Ballot Board did not abuse its discretion in initially rejecting the mail-in ballots of Howard, Marino, and Gray, this does not mean that their votes were "illegal" and not to be counted in the subsequent election contest.

As noted by the panel, the law presumes that an Early Voting Ballot Board acts properly in rejecting and accepting ballots. *Reese,* 80 S.W.3d at 661. However, an election contest challenger may overcome this presumption with evidence that the board made a mistake. *Id.* To overcome the presumption in this case, Harrison presented to the trial court the testimony of Howard, Marino, and Gray. Howard testified that the signatures on both the pertinent carrier envelope and the pertinent ballot application were in fact his. Marino testified that the signature on the pertinent ballot application was in fact his and that he "printed" his name on the pertinent carrier envelope. Gray testified that he signed the pertinent carrier envelope, but that his wife signed the pertinent ballot application for him. All three further testified that they voted for Harrison.

Thus, in regard to Howard and Marino, Harrison presented conclusive evidence that the Early Voting Ballot Board made a mistake in initially rejecting their ballots and votes for Harrison. To the extent that the panel relies on *Reese* in concluding otherwise, the panel's reliance is misplaced. In *Reese,* the election challenger did not present the testimony of the voters whose ballots had been rejected by the ballot board. 80 S.W.3d at 661. As noted by the *Reese* court, "Reese could have refuted Duncan's evidence by presenting controverting *evidence showing that the signatures were genuine,* but she did not." *Id.* at 662 (emphasis added). Here, both Howard and Marino testified that their hand writings were in fact genuine.

Although it is generally true that a fact finder is free to believe all, part, or none of the testimony of a witness, the Texas Supreme Court has noted that a fact finder's "decisions regarding credibility must be reasonable." *City of Keller v. Wilson,* 168 S.W.3d 802, 820 (Tex.2005). As explained by the court, fact finders "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id.*

Here, the trial court was not free to disbelieve the testimony of Howard and Marino that their hand writings on the pertinent ballot applications and carrier envelopes were genuine. Accordingly, the panel's holding that the trial court did not abuse its discretion in rejecting the ballots of Howard and Marino on the grounds that the signatures on the envelopes containing their mail-in ballots did not match the signatures on their mail-in ballot applications is in error, and this court should address Harrison's second argument.

Moreover, the panel's misapplication of law in this election contest case effectively nullifies the legal votes of Howard and Marino, disenfranchises them from the voting process, and denies them the safeguard of the Equal Protection Clause of the Fourteenth Amendment. *See Bush v. Gore,* 531 U.S. 98, 104–05, 121 S.Ct. 525, 530, 148 L.Ed.2d 388 (2000) ("State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). Accordingly, en banc consideration in this extraordinary circumstance is required. Tex.R.App. P. 41.2(c).

Justice JENNINGS, dissenting from the denial of en banc consideration.