Opinion issued May 10, 2006 







 











In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01065-CV




DONALD HARRISON, Appellant

V.

LEROY STANLEY, Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2005-45756




OPINION DISSENTING FROM THE DENIAL 
OF EN BANC CONSIDERATION 

          The panel, in its opinion, errs in holding that the trial court did not abuse its
discretion in rejecting the ballots of two of the voters in question in this election
contest case on the grounds that the signatures on the envelopes containing their mail-in ballots did not match the signatures on their mail-in ballot applications. Moreover,
the panel’s misapplication of law effectively nullifies the legal votes of the two
voters, disenfranchises them from the voting process, and denies them the safeguard
of the Equal Protection Clause of the Fourteenth Amendment.


 Accordingly, I
respectfully dissent from the denial of en banc consideration of this case.
          In his sole issue, appellant, Donald Harrison, argues that the trial court abused
its discretion in deciding this election contest case in favor of appellee, Leroy Stanley,
because the trial court erroneously rejected three crucial votes in favor of Harrison
on the grounds that (1) the signatures on the envelopes containing the mail-in ballots
in question did not match the signatures on the three voters’ mail-in ballot
applications and (2) the three voters received “undisclosed assistance” in completing
their mail-in ballots.
          In its opinion, the panel noted that 
To determine whether the trial court abused its discretion, we must
review and compare each signature on the early voting ballot
applications and carrier envelopes the trial court found to be
non-genuine to ascertain whether the signatures are similar enough (i)
to compel the conclusion that the same person signed them, or (ii) to
override the trial court’s conclusion that the same person did not sign
them.

Harrison v. Stanley, No. 01-05-01065-CV, slip op. at __ , (Tex. App.—Houston [1st
Dist.] April 27, 2006, no pet. h.) (quoting Reese v. Duncan, 80 S.W.3d 650, 661 (Tex.
App.—Dallas 2002, pet. denied)). The panel holds that “the [Early Voting] Ballot
Board acted properly in comparing the signatures on the application and carrier
envelope to determine whether they were signed by the same person.” Then, the
panel, after its own analysis of the signatures in question, further holds that the trial
court did not abuse its discretion in rejecting the ballots of the three voters, Donald
Howard, Angel Marino, and Gary Gray. In reaching its holding as to Howard, the
panel notes that “the trial court was entitled to believe all, part, or none” of his
testimony. See Munters Corp. v. Swissco-Young Indus., Inc., 100 S.W.3d 292, 299
(Tex. App.—Houston [1st Dist.] 2002, pet. dism’d). The panel does not address
Harrison’s second argument. 
          In his Motion for En Banc Consideration, Harrison notes that “the panel made
an error similar to that made by the trial court in focusing on something that was
never an issue in the case.” He notes that “[w]hether the signatures matched was
never the issue” and
No one in the case, least of all Appellant, questioned the Ballot Board’s
authority, its competence, or its discretion in making that determination. 
The panel stated that Ballot Boards have the authority to match
signatures, then stated it was not error to do so and ruled for Appellee. 
The only point the Appellant tried to make about the Ballot Board was
that its decision could not be dispositive since its legitimate function
(comparing signatures) is not the ultimate statutory standard in an
election contest (i.e. finding out factually whether the signatures were
from the same person—a trial court function). When the trial court (and
the panel of this court) looked only at whether the Ballot Board had a
basis for saying the signatures did not match, it failed to conduct the
statutory inquiry of whether the signatures, matching or not, were in fact
those of the voter. 
          In Texas, “statutory enactments concerning elections must be strictly enforced
to prevent fraud, [but] they must also be liberally construed in order to ascertain and
effectuate the will of the voters.” Little v. Alto Ind. Sch. Dist., 513 S.W.2d 886, 891
(Tex. Civ. App.—Tyler 1974, writ dism’d). In fact, the sole purpose of an election
contest is to determine the true outcome of an election. The tribunal hearing an
election contest “shall attempt to ascertain whether the outcome of the contested
election, as shown by the final canvass, is not the true outcome” because:
(1) illegal votes were counted; or
 
(2) an election officer or other person officially involved in the
administration of an election:
 
                    (A) prevented eligible voters from voting;
                    (B) failed to count legal votes; or
                    (C) engaged in other fraud or illegal conduct or made a
mistake. 
Tex. Elec. Code Ann. § 221.003(a) (Vernon 2003) (emphasis added). An “illegal
vote” is a vote that “is not legally countable.” Tex. Elec. Code Ann. § 221.003(b)
(Vernon 2003).
          Here, Harrison alleges that the Early Voting Ballot Board made a mistake in
failing to count the legal votes of Howard, Marino, and Gray. There is no allegation
and no evidence that any of these duly registered voters engaged in any type of voter
fraud. 
          The trial court simply found that the Early Voting Ballot Board decisions to
reject the mail-in ballots of Howard, Marino, and Gray, “based on the finding that the
signatures on the applications did not match their respective signatures on the carrier
envelopes were correct and properly within their discretion in all respects.” The trial
court ruled that the “result of that decision is that the rejection of those mail-in ballots
is sustained and not overturned and those votes continue not to be counted in favor
of the contestee, Harrison.” However, even assuming, as the trial court concluded,
that the Early Voting Ballot Board did not abuse its discretion in initially rejecting the
mail-in ballots of Howard, Marino, and Gray, this does not mean that their votes
were “illegal” and not to be counted in the subsequent election contest. 
          As noted by the panel, the law presumes that an Early Voting Ballot Board acts
properly in rejecting and accepting ballots. Reese, 80 S.W.3d at 661. However, an
election contest challenger may overcome this presumption with evidence that the
board made a mistake. Id. To overcome the presumption in this case, Harrison
presented to the trial court the testimony of Howard, Marino, and Gray. Howard
testified that the signatures on both the pertinent carrier envelope and the pertinent
ballot application were in fact his. Marino testified that the signature on the pertinent
ballot application was in fact his and that he “printed” his name on the pertinent
carrier envelope. Gray testified that he signed the pertinent carrier envelope, but that
his wife signed the pertinent ballot application for him. All three further testified that
they voted for Harrison. 
          Thus, in regard to Howard and Marino, Harrison presented conclusive evidence
that the Early Voting Ballot Board made a mistake in initially rejecting their ballots
and votes for Harrison. To the extent that the panel relies on Reese in concluding
otherwise, the panel’s reliance is misplaced. In Reese, the election challenger did not
present the testimony of the voters whose ballots had been rejected by the ballot
board. 80 S.W.3d at 661. As noted by the Reese court, “Reese could have refuted
Duncan’s evidence by presenting controverting evidence showing that the signatures
were genuine, but she did not.” Id. at 662 (emphasis added). Here, both Howard and
Marino testified that their hand writings were in fact genuine.
          Although it is generally true that a fact finder is free to believe all, part, or none
of the testimony of a witness, the Texas Supreme Court has noted that a fact finder’s
“decisions regarding credibility must be reasonable.” City of Keller v. Wilson, 168
S.W.3d 802, 820 (Tex. 2005). As explained by the court, fact finders “cannot ignore
undisputed testimony that is clear, positive, direct, otherwise credible, free from
contradictions and inconsistencies, and could have been readily controverted.” Id. 
          Here, the trial court was not free to disbelieve the testimony of Howard and
Marino that their hand writings on the pertinent ballot applications and carrier
envelopes were genuine. Accordingly, the panel’s holding that the trial court did not
abuse its discretion in rejecting the ballots of Howard and Marino on the grounds that
the signatures on the envelopes containing their mail-in ballots did not match the
signatures on their mail-in ballot applications is in error, and this court should address
Harrison’s second argument. 
 
 
 
 
 
 
 
          Moreover, the panel’s misapplication of law in this election contest case
effectively nullifies the legal votes of Howard and Marino, disenfranchises them from
the voting process, and denies them the safeguard of the Equal Protection Clause of
the Fourteenth Amendment. See Bush v. Gore, 531 U.S. 98, 104–05, 121 S. Ct. 525,
530 (2000) (“State may not, by later arbitrary and disparate treatment, value one
person’s vote over that of another.”). Accordingly, en banc consideration in this
extraordinary circumstance is required. Tex. R. App. P. 41.2(c). 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Hanks. 

Justice Jennings, dissenting from the denial of en banc consideration.